n the Matter of the Estate of GEORGE H. COUTTS, Deceased.

Surrogate's Court, Kings County, May 7, 1931.

94

*Frank G. Wild*, in person.

*C. Elmer Spedick*, for Title Guarantee and Trust Company, as trustee.

*Donald B. Stewart*, in person, general guardian of George T. Stewart, Donald G. Stewart and Alexander C. Stewart, infants.

*Breed, Abbott & Morgan*, for Donald B. Stewart, as general guardian of George T. Stewart, Donald G. Stewart and Alexander C. Stewart, infants.

*James P. Judge*, special guardian for James C. Pryor, Jr., an infant.

WINGATE, S. An architect's remuneration is customarily based on a percentage of the cost of the completed building under his charge. A claim by such a person to be paid in full, when only the first and second stories were finished, coupled with the assertion that a like sum would be due when the third story and roof were completed, would receive scant recognition by the courts.

Although such a case is by no means parallel to the rights asserted by the fiduciaries in this estate, analysis will demonstrate that the analogy is not so remote as might be judged at first glance.

Here the fiduciaries are insisting that they are entitled to two

commissions as trustees because the directed term of the testamentary trust is for two lives. In other words, that by providing that the trust property be held for the life of his wife and, after her death, that aliquot parts of the same fund be held by the same trustees for other individuals, the testator intended and the statute permits the payment of two full commissions to the same individuals for their holding the same fund as trustees, during the single period during which the legal and equitable interests in the property are vested other than in the same individual.

The final result of this contention is somewhat startling when applied to the facts of this case. If sustained, it would, in effect, affirm the right of the several fiduciaries who will have handled this estate from the death of the testator until the final distribution to those entitled in possession, to an aggregate of *seven* full commissions on its principal, in addition to the commissions payable on the annual income; *i. e.*, a full commission as executor and another as trustee to Mrs. Coutts; a full commission as executor to Mr. Wild and two full commissions to him as trustee; and two full commissions to the Title Guarantee and Trust Company as substituted trustee. This would result in a diversion of approximately fourteen per cent of the principal of his estate from the designated beneficiaries of testator's bounty.

The facts which give rise to this controversy are as follows: George A. Coutts died on August 16, 1913, leaving a will executed the seventh of the previous March, which was admitted to probate in this court on August 30, 1913. By the 7th item of this document he devised and bequeathed the residue of his estate " to my executors * * * to hold and invest and keep invested and to pay the income therefrom " to his wife, Caroline S. Coutts, for life. The item then proceeded: " Upon her death, I direct my said executors to divide the principal of the trust funds into three equal parts and one of said parts to hold and invest and keep invested and to pay the income therefrom quarterly to my daughter, Jean McPhail Coutts, during her life and upon her death to pay the principal thereof to her issue her surviving and in default of such issue to her sister or sisters, her surviving." Similar directions were made for the benefit of testator's other two daughters in identical terms respecting the other two-thirds.

By the 11th item of the will testator appointed his wife, Caroline S. Coutts, and Frank G. Wild " to be the executors and trustees under this will; " further providing that " upon the death of the shorter lived of them I direct the survivor to apply for the appointment of some sound and reliable trust company to act in the place of the one so dying."

Both executors qualified, and by a decree of this court entered on the 17th of March, 1915, their accounts as executors were judicially settled, the remainder of the estate in their hands was directed to " be assigned, transferred and set over " by them to themselves as trustees and they were awarded full commissions as executors and one-half commissions, on receiving, as trustees. These sums were duly paid. The primary life tenant of the trust thus erected, who, as noted, was also one of the trustees, died on November 27, 1929, and in accordance with the testamentary direction for the appointment of a substituted trustee, the Title Guarantee and Trust Company was duly appointed and qualified as such.

Although under the terms of this will, it seems entirely apparent that there was no such severance of the duties of executor and trustee as to warrant the payment of full commissions to the named testamentary fiduciaries on the facts existing in 1915 (*Matter of Abrahams*, 136 Misc. 538; *Matter of Jackson*, 138 id. 167; *Matter of Rappold*, Id. 163; *Matter of Galloway*, 139 id. 183 and cases cited in these four opinions), that question is *res adjudicata* at the present time and its consideration by this court is foreclosed. (*Matter of Abrahams*, 136 Misc. 538, 546, and cases cited under rule 10 therein deduced.)

The rights of Mrs. Coutts and Mr. Wild respectively to the full commissions as executors, and half commissions as trustees, which they then received are, therefore, not open to attack.

The questions submitted for present determination are the following additionally asserted rights:

1. The right of Mrs. Coutts' estate to an additional half commission as trustee.

2. The rights of Mr. Wild at this time to an additional half commission as trustee for paying out, and a second half commission as trustee for receiving, in addition to the half commission for receiving which was paid him in 1915. This carries with it a possible implication of his rights to still another half commission upon the termination of the trusts and the payment over of the corpus to those ultimately entitled in possession.

3. The right of the Title Guarantee and Trust Company to receive two commissions at half rates for receiving, and one for paying out at the present time, with the implication of a further half commission on paying out on the termination of the trusts.

No controversy exists respecting the rights of Mrs. Coutts' estate and of Mr. Wild to commissions as trustees under the decree of March 17, 1915, for receiving the increment in value of the corpus

between that date and the time of Mrs. Coutts' death, and this item is, therefore, passed by consent of the parties.

Approaching the question of the rights of these fiduciary claimants, it should be noted at the outset that *Matter of Abrahams* (136 Misc. 538) has absolutely no application whatsoever to the facts of the case at bar.

Both the surviving and the substituted trustee cite the decision of this court in this case as authority for their contentions. It is no such thing. This is clearly demonstrated in the opening paragraph of that opinion which states that the sole question presented and determined, is as to the rights of persons named in a will as executors to receive commissions as trustees in addition to their commissions as executors on the whole or a part of the estate which came into their hands as executors. The question involved in such a determination, in the absence of express controlling language in the will, depends on whether or not the duties as executor and trustee are separate and distinct, or whether they overlap in such a manner as to constitute a substantially single function. The rules adduced from previously decided controlling cases in *Matter of Abrahams* are directed merely to the question of when the courts will construe such duties to overlap and when they will not. The scope and limitations of the *Abrahams* decision were fully and carefully pointed out by this court in its decision in *Matter of Galloway* (139 Misc. 183).

As already indicated, there is no question in the case at bar respecting the executorial duties of the fiduciaries and whether or not they overlap the duties as trustee. That question is *res adjudicata.* The sole matter now to be decided is as to whether section 285 of the Surrogate's Court Act, which regulates commissions, contemplates that a trustee admittedly acting as such in respect to a fund which is to be held by him in trust for more than the life of a single *cestui que trust,* is in reality a trustee of two trusts for the successive life tenants or whether the estates held for such two successive lives constitute only a single trust, entitling the fiduciary only to a single commission for its complete execution.

The provisions of section 285 of the Surrogate's Court Act, so far as here pertinent, concern the allowance to a " testamentary trustee." He is granted commissions at given rates " for receiving and paying out all sums of money."

In subsection 6 of section 314 it is stated that " The expression ' testamentary trustee,' includes every person, except an executor, an administrator with the will annexed, or a guardian, who is designated by a will, or by any competent authority, to execute a trust created by a will."

This is, in effect, identical with the definition given by the New Jersey Court of Errors and Appeals in *State* v. *Grover* (37 N. J. L. 174, 176), where trustees are defined as "a class of persons who hold property upon the trust or confidence that they will apply the same for the benefit of those who are entitled, according to the intention expressed, either by the parties themselves, or by the deed, will, settlement or arrangement of another."

*Fesmire* v. *Shannon* (143 Penn. St. 201, 209) contributes the following: "His office [the office of a trustee] is to hold and safely keep the trust funds in accordance with the terms of the instrument creating the trust." It being clear, therefore, that a trustee is the person designated to conduct a trust, the next point of importance is to determine what a trust is, and what its defining limits are.

The historical development of the modern doctrine of trusts furnishes an interesting study. The device had its inception in the early days of the Roman Empire and resulted from the then existing legal rule that a testator could not direct the devolution of his property beyond the first taker, who was held to receive an absolute fee in the subject-matter of the gift. Therefore, if the testator desired that a second person should receive a benefit therefrom, he was obliged to place his confidence or trust in the good faith of the primary beneficiary who could not be held legally accountable although the third person might have a moral claim upon him. The Emperor Augustus directed the consuls to use their power to enforce these moral rights and these powers later devolved upon a special officer known as *fidei commisarius*.

This system continued through the civil law and was engrafted on common-law jurisprudence through the Ecclesiastical Courts, and their successors, the chancellors and Courts of Equity. By this means, in cases which later received statutory recognition, the person in whom the trust or confidence was reposed was compelled to employ the property in the manner and for the objects desired by its original owner. He was forced not to betray the confidence which he had undertaken and to hold, employ and distribute it according to the directions to which he had expressly or by implication given his assent. It followed that this trust or confidence did not escape from equitable cognizance until the task resting in conscience as distinguished from strict legal obligations, was completed and the relationship of the ultimate taker to the property in question again became one of strict legal cognizance.

Under the modern, as well as the historical doctrine, therefore, a trust arises where the legal, and equitable or beneficial, interests in specific property are vested in different individuals or sets of individuals. This may occur either by will or agreement, or by

operation of law. The relationship has its inception when such separation of the legal and equitable interests takes place and terminates only when they are completely reunited. (*Crooke* v. *County of Kings*, 97 N. Y. 421, 436, 437, 439, 440; *Duke of Cumberland* v. *Graves*, 9 Barb. 595, 608; affd., 7 N. Y. 305; *Locke* v. *Farmers' Loan & Trust Company*, 140 id. 135, 147; *Hopkins* v. *Kent*, 145 id. 363, 368; *Kahn* v. *Tierney*, 135 App. Div. 897, 900; affd., 201 N. Y. 516; *Munroe* v. *Crouse*, 59 Hun, 248, 255; Real Prop. Law, § 109.)

A trustee is entitled to receive his compensation for the task imposed by the terms of the trust, but these services in conducting its affairs begin at the time he rightfully assumes the relationship and do not terminate until the entire obligation undertaken has been completed.

As is said in *Matter of Mason* (98 N. Y. 527, at p. 536): " The surrogate held that, upon the termination of their trusts, and the full performance of their duties thereunder, the trustees would be entitled to one-half commissions upon the capital of the trust funds received by them. In this there was no error. Whenever the time shall come that the trusts are terminated and the trustees have fully discharged their duties, then they will be entitled to have one-half commissions for receiving the trust funds, and the other half *for paying or turning the same over to the beneficiaries*, whether the funds be then in money or choses in action." (Italics not in original.)

*Beard* v. *Beard* (140 N. Y. 260) contributes the following (on p. 265): " We think the true rule for allowance of statutory commissions is this: Trustees are entitled to commissions for receiving all moneys which constitute the *corpus* of the estate, and any additions thereto from increase of any kind, and thus the moneys upon which commissions are to be computed can never exceed the gross amount of the estate and its net income; and the moneys paid out upon which commissions may be computed are the moneys paid out of the estate for debts, expenses of administration and to legatees or other beneficiaries, moneys which operate to diminish the estate as it exists in the hands of the trustees and pass out of and away from the estate." (See, also, *Matter of Kellogg*, 7 Paige, 265, 266, 267; *People* v. *Brooklyn Bank*, 64 Misc. 538, 548.)

It is somewhat significant that none of the parties to this proceeding have been able to refer to any case in all the long history of trusts in which a similar claim was asserted by fiduciaries with the exception of *Leask* v. *Beach*, which was cited in the opinions of this court in the *Abrahams* and *Jackson Cases* (*supra*) and in which such right was emphatically denied.

In *Leask* v. *Beach* (173 App. Div. 873) the testator erected a trust fund of $440,000 for the life of Mahlon Hoagland, directing that on his death half of the sum should be paid to certain remaindermen outright, and the balance should be held on certain further specified trusts for the lives of other individuals, with absolute remainders over. The trustees claimed second commissions as such on the funds which were not payable outright and which remained undistributed in the trusts on the death of the first life tenant. In denying their claims the court said (at p. 875): " The argument in support of this claim is that the 18th clause of the will provided for distinct successive trusts, one of the whole fund which was completely terminated upon the death of Mahlon Hoagland, and that thereupon an entirely new and separate trust was set up under which the trustees assumed new duties and became entitled to new commissions. The only real foundation for this claim is to be found in the language of the will, which provides that upon the death of Mahlon Hoagland the sum of $220,000 ' shall be paid over ' to the executors to be held in trust during the respective lifetimes of the designated beneficiaries. Of course the ' paying over ' of the capital sum by the trustees to themselves was a matter of mere bookkeeping and amounted to nothing more than retaining in their own hands certain sercurities in which the fund had already been invested. The practical result was precisely as if the testator had in terms provided that upon the death of Mahlon Hoagland his executors should ' retain ' the sum of $220,000 for the lives of the designated beneficiaries. If the will had thus provided there would have been no ground whatever for the trustees' claim to triple commissions, and in our opinion the will should be so construed. It is not to be presumed that the testator used the words ' shall be paid over ' merely for the purpose of investing his executors with the right to receive multiple commissions. It is much more reasonable to assume that he intended to effect precisely what his will did effect, to wit, that on the death of Mahlon Hoagland the executors should pay over one-half of the trust fund and continue to hold the other half in trust. Multiple commissions are not so highly favored in the law that the terms of a will should be strained so as to permit of their payment. Upon this question we think that the appeal should prevail and the judgment modified accordingly."

Petitioners here seek to distinguish this case from the one at bar. It is indistinguishable. If anything, the instant facts are stronger against the asserted right than were those in *Leask* v. *Beach*. There the direction, on the termination of the primary trust, was that the fund " shall be paid over " by the trustees to

themselves. In the will at bar they are expressly directed to "hold" it, which inevitably connotes continuity of possession.

*Matter of Thomas* (254 N. Y. 292) is not in point. There a trust was erected for a single life. Under the peculiar terms of the will, the Court of Appeals held that a substituted trustee must be appointed before the funds were distributed to the remaindermen. Obviously, on such a finding the trustee was entitled to a half commission for receiving. It then participated in the paying out to those entitled in possession and likewise became entitled to a half commission for the performance of that act just as the present trustees will be, if, as and when they do the same thing.

It follows, therefore, that on the basic theory of trusts as well as on controlling authority, the extraordinary claims of the fiduciaries herein cannot be sustained.

Mrs. Coutts qualified as trustee and performed a part of the duties appertaining to the confidence imposed. Such performance probably amounted to about half of the entire fiduciary obligation. She has received payment of one-half a commission and is entitled to no more. (*Matter of Todd*, 64 App. Div. 435, 436; *Palmer* v. *Dunham*, 6 N. Y. Supp. 262, 264; *Matter of Ziegler*, 218 N. Y. 544, 556; *Matter of Bushe*, 227 d. 85; *Matter of Healy*, 138 Misc. 462, 463.)

Mr. Wild has already received his half commissions for receiving as trustee, and aside from such additional commissions as he should receive on increment may not be paid more on principal unless or until some part or parts of the trust vest in final possession in the remaindermen. If then in office, he will presumably be entitled to the other half of his trustee's commission on paying out, on the portions thus actually paid over, as distinguished from being shifted from one pocket to another.

The rights of the substituted trustee are similar except that as it has not yet received any commissions, it is entitled to a commission at half rates at the present time.

This is not a final accounting of trustees in any sense, and the decree will direct the trustees to continue to hold the trust funds in accordance with the terms of the testamentary directions.

Proceed accordingly.