In the Matter of the Estate of FRANCIS G. LLOYD, Deceased.

Surrogate's Court, New York County, April 6, 1939.

*Gifford, Woody, Carter & Hays* [*Raymond M. White* and *Kenneth R. Strickland* of counsel], for the trustees.

*Thomas I. Sheridan,* special guardian for infants.

DELEHANTY, S. By their petition the trustees acting under the will of deceased ask construction of his will in respect of the operation of paragraph tenth thereof. The petition details certain transactions in connection with the shares and the dividends on shares of a company in which deceased had a substantial interest, such shares being a part of the corpus of the trust. Advice is asked whether the tentative program of the trustees for the disposition

of a dividend referred to in the petition is justified by the will. The special guardian claims that the dividend belongs to principal account and that it is not distributable to income as proposed by the trustees. This is the point at issue.

When deceased died on October 6, 1920, the corporation in question had an authorized capital of 20,000 shares of preferred stock with a par value of $100 per share and had 50,000 shares of no par common stock having a stated value of twenty dollars per share. Thus the total capital stood at $3,000,000. In this corporation capital deceased owned 2,500 shares of preferred and 12,500 shares of common stock — of the total face and stated value of $500,000. On February 1, 1921, after deceased's death, the corporation increased its capital by $250,000, represented by 2,500 additional preferred shares. The directors declared a five-dollar dividend on the common stock after this increase and made the dividend payable in the new preferred shares. On August 9, 1921, the capital again was increased by an additional $250,000, represented by an additional issue of 2,500 shares of preferred stock. Another dividend of five dollars per share was then declared on the common stock and was made payable in preferred shares. On November 1, 1923, the capital, which then stood at $3,500,000, was increased to $4,000,000. The increase was represented by 5,000 new preferred shares. A dividend of ten dollars was then declared on the common shares and was made payable in the new preferred shares.

The 625 shares produced by the dividend declaration following the capital increase of February 1, 1921, the further 625 preferred shares produced by the dividend declaration following the capital increase of August 9, 1921, and the further 1,250 preferred shares produced by the dividend declaration following the capital increase of November 1, 1923, were all earmarked by the trustees as income to the income beneficiaries. The trustees continued to hold in the trust the original 2,500 shares of preferred stock and 12,500 shares of common stock. From and after the increases in capital the preferred shares held in the trust no longer represented a one-eighth interest in the total preferred share issue. After November 1, 1923, the trust shares represented only a one-twelfth interest in the whole preferred issue.

While the trustees report that their account for the period ending December 31, 1928, was settled by a decree of this court on September 17, 1929, and while they assert that in the account so settled the dividends on common shares paid in preferred shares as described above were listed as the private property of the income beneficiaries, and while the trustees assert that their account so reporting the shares was approved in this respect, they, nevertheless, report these

same shares in various schedules of the present account with a footnote to the effect that part of the shares so included in their accounting for the trust are in fact privately owned by the income beneficiaries. Reference to the prior accounting shows that in an information schedule headed " Schedule I. Other Facts," reference is made to the declaration of dividends which produced the additional preferred shares, and show that in general terms a statement is made that " the beneficiaries of the various trusts created by the will, therefore, became entitled to the shares of preferred stock declared as dividends as above set forth." In the distribution schedules in the former proceeding showing receipts of income by the trustees and payments of income to the beneficiaries no transaction either of receipt or of payment in respect of such shares is reported. The petition in the former proceeding does not ask for a construction. The situation thus presented is that there might be said to have lurked in the record on the former accounting a question as to the propriety of payment of these dividend shares to the income beneficiaries, but the state of the account was not such as to direct the attention of any interested party to the question which is now for the first time clearly presented. (*Matter of Long Island Loan & Trust Co.*, 92 App. Div. 1; affd., 179 N. Y. 520; *Matter of Jackson*, 258 id. 281, 288; *Donahue* v. *New York Life Ins. Co.*, 259 id. 98.)

The court holds that the decree of September 17, 1929, approving the account for the period ending December 31, 1928, did not adjudicate the question now presented either as to the transactions antecedent December 31, 1928, or as to those since that date. It is unnecessary to go into the account of the executors-trustees for the period antecedent January 5, 1923 (the opening date of the account settled by the 1929 decree), because in the account for the period terminating December 31, 1928, the trustees report the receipt by them from the *executors* of the 1,250 shares of preferred stock resulting from the capital increases of 1921. The additional preferred shares were received by the trustees themselves after November 1, 1923, and within the period for which they were accounting in their prior account as trustees.

The present account and the facts stipulated before the court show that the preferred shares ceased to pay dividends after November, 1932. Just prior to the May, 1932, quarterly dividend date on the preferred shares the stated value of the no par common shares was reduced from twenty dollars to five dollars per share. The account shows that the May, 1932, dividend on the preferred was paid, that the August, 1932, dividend was omitted and that the November, 1932, dividend was paid. The amount paid during

1932 after the reduction of the stated value of the common shares was three dollars and fifty cents per share on each preferred share. On the 30,000 outstanding shares this would have amounted to $105,000. The reduction of stated value in the 50,000 common shares by fifteen dollars per share reduced the capital stock liability by $750,000. Whether that reduction was accomplished in order that the preferred stock dividends could be paid does not appear on this record. Since the record is incomplete on the subject no ruling here made will determine whether the $17,500 in cash received on the 5,000 preferred shares held in 1932 by the trustees constituted in any degree principal of the trust estate.

The facts stipulated show that in December, 1936, the capital of the corporation was comprised of 30,000 preferred shares, having a par value of $100 per share, and of 50,000 common shares, having a then stated value of five dollars per share. The capital stock liability, therefore, was $3,250,000. At December 31, 1935, this capital had become impaired to the extent of $897,372.44. Further losses during the remainder of the fiscal year which ended January 14, 1936, increased the deficit by $36,731.13. In the remainder of the year 1936 there was an operating profit of $197,673.84, which, after offsetting adjustments, left a net profit of $77,806.08 for the fiscal year ending January 14, 1937. On December 28, 1936, a dividend of $2.25 per share was declared on the outstanding preferred share issue. The question presented here is the allocation of that dividend between principal and income account. In order to make possible the declaration of this dividend the corporate action next described had to be taken.

On December 22, 1936, a stockholders' meeting authorized the change of the preferred shares of the corporation from par value shares to shares without par value, reduced the capital of the corporation from $3,250,000 to $1,750,000, and authorized the directors to fix the stated value of the no par preferred shares. The trustees voted the trust shares in favor of these changes. By appropriate resolutions the board of directors fixed the stated value of the no par preferred shares at fifty dollars per share. Thus the corporate capital of $1,750,000 was represented by 30,000 preferred shares having the stated value of fifty dollars per share and 50,000 common shares having the stated value of five dollars per share. The change from par to no par and the reduction in stated value of the no par preferred shares did not change the provision for accumulation of dividends on the preferred shares at the rate of seven dollars per share per annum nor did it change the provision that the shares were to receive in liquidation $100 per share prior to any payment on common shares.

The stipulated facts show that the president of the corporation wrote to the stockholders on December 1, 1936, a letter stating that under the then effective Federal Revenue Act the corporation would be required to pay a large additional tax on income for the current year if such income were not distributed during the year 1936. This letter advised the stockholders that if the capital of the corporation was reduced (as the resolutions of December 22, 1936, later provided), a capital surplus of $1,500,000 would be created and that such surplus would be available for distribution as dividends. It is stipulated that counsel for the company had theretofore advised it that without a reduction in capital dividends could not be paid lawfully because of the then existing capital impairment.

Taking the figures as they stood on the books at the end of the prior fiscal year — January 14, 1936 — the capital impairment was $934,103.57. The capital reduction effected by the resolutions of December 22, 1936, operated to reduce the capital stock liability by $1,500,000, and thus on the books there was set up a surplus of $565,896.43. During the year 1936 there was a gross operating profit which left, after adjustments, a net profit of $77,806.08 for the fiscal year ending January 14, 1937. That profit was insufficient to make up the capital impairment existing prior to December 22, 1936. The dividend of two dollars and twenty-five cents on the preferred shares could not have been paid validly except for the reduction in capital effected December 22, 1936.

The question presented on this accounting is whether the payment of this dividend to the life beneficiary by the trustees is justified under the will of deceased. Paragraph tenth of the will provides in part: " I further direct my executors and trustees to treat all dividends and all rights to subscribe for additional stock as entirely income, regardless of the fact that such dividends and rights may possibly encroach upon the principal of the trusts herein created." The only facts which in any wise illuminate the terms of the will are the fact that the corporation whose shares produced the dividend is a New York corporation, the fact that deceased held a large number of shares in the corporation and the fact that such shares represented a substantial portion of his estate. The terms of the will are to be considered in their ordinary sense and meaning. The question is what the words " all dividends " mean in the case of this will.

Deceased died in 1920. His will shows evidence of having been the work of a skilled draftsman. The law of the State was and is that dividends can be paid by a corporation only if a surplus exists sufficient to cover the dividend declared. In the case of trust administrations the authorities were clear in 1920 that the trust

capital as ascertained at the opening of the trust administration was to be preserved. This so-called "intact value" was the standard against which was measured the duty of fiduciaries in allocating extraordinary dividends. There was difficulty in applying that rule though the courts had worked out formulæ which made the administration of trust estates practical. In the case of stock dividends the difficulties of applying the rules had been eliminated by the enactment in 1922 of section 17-a of the Personal Property Law which compelled the placing in principal account of all such dividends unless otherwise expressly provided by the instrument creating a trust. In the rules which dealt with the preservation of the intact value of the trust estate the courts had not concerned themselves minutely with the problem of apportionment. They recognized that a corporation might lose its accumulated surplus and that thus the intact value of a trust estate might in part be lost, but the courts never approved an allocation to income where the plan of dividend declaration would wipe out the principal entirely. (*Bourne* v. *Bourne*, 240 N. Y. 172.) So long as a surplus existed out of which dividends could validly be paid the courts in 1920 approved the distribution of ordinary dividends to the income beneficiaries even though the dividend exhausted in whole or in part a surplus which entered into the computation of the intact value of the trust estate at the opening of the trust. But when the plan of corporate action involved a distribution of original or contributed capital this liberality of treatment of the income beneficiary ceased. A clear statement of the considerations animating the courts is found in *Matter of Opperman* (319 Penn. St. 455; 179 A. 729). There the court said:

" There is, however, a distinction between earned surplus and contributed capital. Contributed capital is neither earnings nor increment, nor may it be included in ' income ' when that term is used in a will and, if paid by way of dividends, current or otherwise, it belongs to corpus; if the ordinary dividend as above described is made up of earned surplus, no matter what its ramifications may be, it follows the rule announced in *Waterhouse's Estate* (308 Penn. St. 422; 162 A. 295), and goes to life tenants.

" The act of the corporate directors in reducing the number of shares of stock so as to produce a surplus would be an administrative act of the corporation and is an unusual circumstance when related to dividends. The fund produced from such procedure remains contributed capital and not earnings. Earned surplus of course stands on a different basis, it is the product of earnings, the fruits of contributed capital.

Having in mind the ordinary meaning of the word dividend, having in mind the reference to subscription rights immediately following this word in the will and having regard for the fact that the will was drawn by a skilled draftsman in the light of the then existing law, it must be held here that the testator did not intend and that the quoted excerpt from his will does not say that the contributed capital of the corporation can in any case be distributed to the income beneficiaries. If once it be admitted that a policy of reducing stated capital and thus producing a capital surplus can validate the payment of a dividend authorized out of a surplus so forced, there is no stopping point at which the court can say that the process must end. If a dividend arising from such procedure is not to be put into capital account of the trust it is evident that the trust principal can be appropriated to income completely. The whole tenor of deceased's will as well as the particular excerpt from it which has been quoted negatives the idea that deceased had approved such a plan. He and his draftsman did have in mind the difficulties in applying the rules as to preservation of intact value and the rules of apportionment. His language permitted the using up of any surplus accumulated prior to his death even though such surplus entered into the computation of " intact value." His language, however, does not admit a construction such as is proposed by the trustees here accounting. It does not mean that a surplus created only by reduction of capital is subject to distribution as income. The words " all dividends," as used in this will, are to be understood as meaning dividends earned and payable in the normal course of ordinary corporate management. In any case they do not apply to the distribution of the contributed capital of the corporation even though that distribution is denominated a dividend by the directors.

The determination here reached is applicable only to the particular dividend reported in the account now before the court. No ruling either way is made respecting the dispositions made by the trustees of earlier dividends. The dividends here in question are wholly capital of the trust and are to be so treated in the decree settling the account.

Submit, on notice, decree construing the will and settling the account accordingly.