In the Matter of the Estate of CATHARINE N. SEARS, Deceased.

Surrogate's Court, Richmond County, April 17, 1941.

*Olin Potter Geer*, for the trustees.

*Cullen & Dykman*, for Anne Tiffany.

*John L. Ketcham*, for Ernest R. Eaton.

*Joseph A. Cox*, for the public administrator of New York county.

BOYLAN, S. In this proceeding the trustees have requested the court to construe the will of decedent and to determine whether certain extraordinary dividends of Cameron Estates, Inc., constitute principal or income.

Mrs. Sears died on November 20, 1923, leaving a will which was executed on November 20, 1922, and admitted to probate by this court on January 11, 1924. Paragraph 7 of said will reads as follows:

" *Seventh.* All the rest, residue and remainder of my estate, of whatever character and wherever situate, I give, devise and bequeath to my executors hereinafter named, in trust, nevertheless, to invest and reinvest the same and to pay over the annual rents, interest, income and profits thereof to my beloved husband, Judah H. Sears, for and during his life; and upon his death to pay and deliver the principal thereof to my nephew, Roderick William Cameron and my sister Anne F. Tiffany, in equal shares, the issue of either of them that may then be deceased to take the share of his or her parent *per stirpes* and not *per capita.*"

Her husband died on September 20, 1938, a resident of New York county, and the public administrator of said county was appointed the administrator with the will annexed of said decedent's estate.

Catharine N. Sears, the decedent, inherited from her parents undivided fractional fee and equitable interests as tenant in common in large tracts of land in Richmond county, which property is commonly known as the Cameron property. Mrs. Sears, her sister, her brother and the executors of the estates of her deceased brother and sister transferred title of this property to Cameron

Estates, Inc. Authority for the transfer by the executors was obtained from the Supreme Court. The order in the proceeding dated April 30, 1923, authorized said executors to convey the undivided interest in said premises to the corporation in return for their proportionate share of the stocks and bonds issued by the corporation. The share of Catharine N. Sears was fixed by said order and after conveying her interest to said corporation on May 12, 1923, she received her share in securities, $64,400 of income bonds and 321 shares of capital stock valued at $32,100.

In the course of the Supreme Court proceedings each parcel of property involved in the proceeding was appraised by an expert and the value determined by the court. Cameron Estates, Inc., immediately started to sell the premises conveyed to it and realized substantial profits on certain sales. These profits were based on the difference between the values as determined by the court and the sales prices. The difference between the value, as determined by the court, of the premises still owned by Cameron Estates, Inc., and their value on the basis of current assessments, shows that the corporation has a large unrealized loss on the premises not yet sold and on one of the purchase-money mortgages which it took back. (Schedule K of the account.)

In order to meet the request of the owners of the stock for dividends, the corporate structure was changed by reducing the value of the stock from $100 per share to no par with a stated value of $10 per share. There was thus created by a like reduction in capital an actual surplus of $90 per share or of $162,000 for the 1,800 shares. From this surplus there were declared extraordinary dividends which the trustees have retained.

The book value of the stock of Cameron Estates, Inc., at the date of the death of Catharine N. Sears was $103.36 per share and after the payment of the last of such dividends said book value was $133.29 per share, but the trustees and remaindermen contend that in fact it was only $65.83 per share and today is only $40.09 because of the unrealized losses of the company. The total of all the dividends and the present value of the stock is less than when Catharine N. Sears died.

The trustees are holding $3,696.49 received by them as extraordinary cash dividends on the stock of Cameron Estates, Inc., and petition the court to determine whether same constitutes principal or income, because if it be determined to be the former they shall pay same to the remaindermen of the trust created by the residuary clause of decedent's will, while if determined to be the latter, they shall pay same to the public administrator as administrator *c. t. a.* of her deceased husband, the life beneficiary, who has died.

The dividends in question in this case were in reality liquidating dividends. They could never have been legally declared except for the reduction in the capital of the corporation and they were really declared from the corporation's original capital assets.

In *Matter of Osborne* (209 N. Y. 450, 477) the Court of Appeals laid down the following rules:

" 1. Ordinary dividends, regardless of the time when the surplus out of which they are payable was accumulated, should be paid to the life beneficiary of the trust.

" 2. Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund."

The extraordinary dividends in the case at bar did entrench " in whole " upon the capital of the trust fund. In *Matter of Enz* (204 App. Div. 634, 637; affd. without opinion, 237 N. Y. 577) the court said: " The right to a dividend as between the life tenant and remainderman of an estate is determined by the facts as to the source and character of the dividend considered in the light of the testator's intention." The facts in *Matter of Lloyd* (171 Misc. 219) are similar to those in this case. In the *Lloyd* case, as in this, the capital of the corporation was reduced and the dividends declared from the surplus thus created. Surrogate DELEHANTY in the *Lloyd* case said (at p. 225): " If once it be admitted that a policy of reducing stated capital and thus producing a capital surplus can validate the payment of a dividend authorized out of a surplus so forced, there is no stopping point at which the court can say that the process must end. If a dividend arising from such procedure is not to be put into capital account of the trust it is evident that the trust principal can be appropriated to income completely."

This court holds that the extraordinary dividends are capital and should be distributed to the remaindermen of the trust.

The book value of the trust fund on June 3, 1927, the date of the decree directing the executors to turn it over to themselves as trustees, was $95,549.45, but at that time it had an actual value of $123,732.49. (Supplemental account, Schedule K, Exhibit G.) The value of the property as of the time of its receipt is the basis for computing the trustees' receiving commissions. (*Matter of Potter*, 106 Misc. 113; *Matter of Julliard*, 171 id. 661; affd., 259

App. Div. 828; leave to appeal denied, 283 N. Y. 778.) The value of the securities in a trust fund for the purpose of determining one-half of the commissions thereon for receiving shall be determined as of the date of the receipt thereof by the trustees. (*Matter of Nash*, 160 Misc. 642, 645.) Two full one-half commissions for receiving the fund should, therefore, be allowed the trustees.

Paying commissions are based upon the funds or property actually disbursed or delivered. (*Matter of Coutts*, 140 Misc. 93; *Matter of Schliemann*, Id. 230; affd., 259 N. Y. 497; *Matter of Grossman*, 157 Misc. 164; affd., 250 App. Div. 503.) As the value of the trust funds is now less than $100,000 (supplemental account, Schedule K), the trustees are collectively entitled to one-half commission for paying out. (*Matter of McCarthy*, 145 Misc. 556.)

In determining whether the gross estate amounts to $100,000, it is not permitted to add the income collected during the administration of the estate to the principal for the purpose of determining whether the estate exceeds $100,000. (*Slosson* v. *Naylor*, 2 Dem. 257; *Matter of Johnson*, 170 N. Y. 139; *Matter of Grossman*, 92 Misc. 656; *Matter of Freeman*, 105 id. 423; *Matter of Roney*, 148 id. 70.)

From the time of the setting up of the trust to 1936, the trustees took two full commissions on income with annual rests, with the acquiescence of Judah H. Sears, the life beneficiary, to whom annual statements were rendered. But one commission on income was taken for the years 1937 and 1938 without the trustees waiving the right to the second such commission. The principal of the trust during 1937 and 1938 had fallen below $100,000. The trustees ask whether or not they are entitled to two full commissions on income for 1937 and 1938.

Each fiduciary up to three is entitled to one full commission on principal and on income if the principal of the estate or fund exceeds $100,000. (*Matter of Julliard, supra.*) In this case the court said (at p. 665):

" Does this refer to the gross value of the principal at the time of the setting up of the trust, the value as fixed at the close of a preceding account, or the value at the end of the period accounted for?

" The ' estate or fund ' which these trustees, selected by the testator, account for is that set up by the executors pursuant to the terms of the decedent's will and whether or not more than one commission should be allowed ought to be determined by the amount then appearing, even though through the mutations of time the corpus has become larger or smaller."

And (at p. 666) the court said: "By the plain reading of the statute if multiple commissions are allowed at all they are allowed on both principal and income."

In *Matter of Burt* (148 Misc. 606) it was said that the word " principal " in the statutory language means principal which the accountants have received and for which they are legally accountable.

The gross value of the principal of the estate governs not only commissions on principal but commissions on income as well. Up to three full commissions, depending upon the number of representatives, are payable on income where the gross value of the principal of the estate is more than $100,000. (*Matter of Van Schoonhoven*, 142 Misc. 384.) As the actual value of the principal the trustees received was $123,732.49, they are entitled to two full commissions on income for the years 1937 and 1938.

Submit decree judicially settling the account and in accordance herewith.