Joseph A. G-avagan, J.
A trustee under an indenture of trust made in 1919, having received during the past several years a variety of unusual stock dividends upon corporate shares held in the trust, has asked the court in this construction proceeding to determine the proper allocation as between income and principal of these stock distributions.
The following provision appears in the trust indenture: ‘ ‘ All stock dividends and extraordinary cash dividends which shall be received by the trustee hereunder shall be considered by it as wholly income and distributed to the beneficiary or beneficiaries hereunder accordingly.” _
*469 This question as to who is entitled to extraordinary dividends, i.e., dividends paid from some source other than current earnings, declared upon shares held in trust as between the life tenant under the trust and the remaindermen was characterized in 1913 as the most “ troublesome ” question before the courts (Matter of Osborne, 209 N. Y. 450, 458). One phase, at least, of the problem was later solved pragmatically by the Legislature when it directed that, unless otherwise provided in a trust instrument thereafter executed, any dividend payable in stock shall be principal and not income of the trust (L. 1926, ch. 843, now Personal Property Law, § 17-a). The statute, however, has no application here, since it has no retroactive effect and this settlor did provide otherwise.
Where the intent of the settlor has been expressed, it is controlling on this question, as the choice is his who shall share in the disposition of his property, whether it be principal or income. The difficulty generally is that his intention has not been expressed by the draftsman in sufficiently explicit terms to avoid the necessity of a construction which depends largely upon inferences.
A person’s intention, particularly when set forth in formal language, is to be determined in the light of the law then prevailing on the subject. We may divine this settlor’s intention in expressly providing that “ all stock dividends and extraordinary cash dividends * * shall be * * *
wholly income ” if we know how such dividends, in the absence of any provision, would have been treated by the courts at the time of the making of the indenture.
Matter of Osborne (supra) had established the rule that, unless the creator of the trust otherwise provided, that part of a stock dividend which represented corporate earnings before the creation of the trust should be retained as part of the capital of the trust and that part which represented earnings after the creation of the trust should be allocated to the income beneficiary, it being necessary to make such a distinction in order to maintain unimpaired the principal of the trust. It thus becomes clear what this settlor had in mind when he inserted the quoted proxdsion in the indenture: that the trustee should not apportion stock or extraordinary cash dividends between principal and income on the basis of corporate earnings before or after the creation of the trust but should consider them as “ wholly ” income.
But the question still remains — and, in fact, is the specific issue here raised between the trustee and the life tenant — as to whether the words “ all stock dividends ” embrace any and *470 all stock distributions of whatsoever nature. Since the settlor did not use the broad word, “ distributions,” and furnished no clue as to his intentions by any explanatory language, guidance must be sought in the view which the courts perforce have taken of stock dividends in construing trust instruments where, in the absence of a clear expression to the contrary, equity must be done between the opposing interests of life tenant and remainderman. We are not concerned in this context with the treatment accorded stock dividends under the tax or corporation laws but solely with the issue as it affects these conflicting trust interests.
Obviously, that question is not determined by the characterization or name given to a stock distribution by a particular corporation. It is essential in each case to ascertain from what source or fund the stock distribution has been made available and declared.
Where the distribution is simply a return of capital, it is clear that the allocation must be to the principal of the trust, since such a distribution merely represents a change, in the form of the property held in the trust, unless, of course, the settlor has by unambiguous language directed otherwise. Any distribution made on liquidation of a corporation’s assets or as a result of reduction of its capital by disposing of part of its assets must logically be considered as a return of the capital of the trust, albeit in different form, and not income. (Matter of Benary, 194 Misc. 271; Matter of Sears, 176 Misc. 242.) In Matter of Lloyd (292 N. Y. 280) while the extraordinary dividend was paid out of a so-called surplus resulting from a reduction of the corporation’s capital and thus representing a mere return of capital, the court pointed out (p. 282) that the instrument expressly stated that all dividends and rights to subscribe should be treated as “ entirely income, regardless of the fact that such dividends and rights may possibly encroach upon the principal of the trusts herein created ’ ’. That clear command evincing a deliberate choice required, in the court’s opinion, the allocation to income of this unusual dividend despite the resultant diminution in the “ intact ” value of the principal of the trust. But that case is authority for such an exceptional holding only within its factual framework.
The question often arises in these days of complicated corporate recapitalizations as to whether additional stock issued by a corporation represents a stock dividend in the true sense or merely a “ stock split-up ” with no consequent increase in the actual capital of the corporation. Where the new stock represents an increase in the- amount for which the corporation *471 is capitalized, as where the additional shares are paid for by-transferring funds from earned surplus or capital surplus to the capital account, the distribution must be regarded as a true stock dividend (Matter of Davis, 128 N. Y. S. 2d 152; Matter of Lawrie, 119 N. Y. S. 2d 906). In Matter of Lawrie (supra, p. 911), it was said: “ The essential distinction between a stock dividend and a stock split is that in the former there is a capitalization of earnings or profits together with a distribution of the added shares which evidence the assets transferred to capital, while in the latter there is a mere increase in the number of shares which evidence ownership without altering the amount of capital or surplus.”
Similarly, in the recent case of Matter of Horrmann (3 A D 2d 5, 7) the Per Curiam opinion of the majority of the Appellate Division of this department stated: “ It would not be natural for a settlor to intend a pro tanto destruction of a trust whenever there was a stock split-up or mere multiplication of shares. Certainly such an intention should not be ascribed to a settlor unless language employed in the trust instrument compels or clearly indicates such an intention. We do not find words of such explicitness or implicitness in the instrument here. * * * A mere stock increase or split-up which is a substitution of more shares for the number of shares outstanding is not a dividend in any ordinary or proper concept of the term. It is in no sense income but only an adjustment of capital.”
It was accordingly held that to the extent that the stock distribution there involved represented a stock split-up, it was to be treated as principal, and to the extent that it represented a true stock dividend or capitalization of earnings, it was to be treated as income. It may be observed that Mr. Justice Bbeitel, who alone dissented, found special circumstances which, in his opinion, called for a determination that the settlor and his attorney were justified in treating all of said distribution as income. We need only note that no such special facts are here present.
It must therefore be held that so much of the stock distributions received by this trustee as represent a return of capital or a watering down of the previously outstanding stock, commonly referred to as a stock split-up, are to be retained in principal and only such portion as is represented by earnings transferred from earned surplus or by profits realized on capital assets transferred from capital surplus into the capital account, shall be delivered' as income to the life tenant. The fact that the settlor used the expression, “ all stock dividends ” (emphasis supplied) cannot be urged to extend the meaning *472 beyond the accepted understanding in trust law of “ dividends ” so as to include stock distributions which are in fact not dividends but a return of capital, unless, a clear and express contrary intent is in evidence (see Matter of Lissberger, 188 Misc. 811; Matter of Muller, 145 N. Y. S. 2d 283; Matter of Bernard, 3 Misc 2d 31, where an almost identical trust clause was involved; see, also, Ann. 44 A. L. R. 2d 1277).
Applying these principles to the stock distributions involved in this proceeding:
(1) Standard Oil Company of New Jersey (2 distributions): 364 2/7 shares represent capitalization of earned surplus and capital surplus and are payable as income to the life tenant; the remaining 385 5/7 shares represent a stock split-up and are to be retained by the trustee in principal. One of these very distributions was involved in Matter of Horrmann (supra) and in Matter of Bernard (supra).
(2) Firemen’s Fund Insurance Company. This stock distribution was made from a so-called reduction surplus created by reducing the par value of the stock from $5 to $2.50 and thus falls within the classification of a mere stock split. It is to be retained in principal.
(3) General Electric Company: 262% shares represent capitalization of earnings and belong to income; the remaining 37% shares resulted from the so-called reduction surplus created when the no par value stock was changed into $5 par value stock and belong to principal. This is the very distribution involved in Matter of Muller (supra).
(4) National Dairy Products Corporation: This stock distribution resulted from a bookkeeping transfer some months previously from capital account to capital surplus account effected after a reduction of the par value of the stock from $10 to $5 and the issuance some time later of a “ 100% stock dividend ” based upon that capital surplus. The fact that several months intervened between the two transactions is immaterial. The source from which the so-called dividend was derived was the corporation’s own capital account, achieved by the device of reducing its par value. This distribution is to be retained in principal, and so it was held with regard to this very distribution in Matter of Muller (supra).
(5) Consolidated Natural Gas Company: 150 shares represented capitalization of profits transferred from capital surplus to capital account and thus belong to income; the remaining 150 shares resulted from the reduction of par value from $15 to $10 and therefore belong to capital.
*473 (6) B. F. Goodrich Company: This distribution resulted entirely from a transfer from capital surplus to capital account and thus belongs to income.
(7) Connecticut General Life Insurance Company: This distribution resulted entirely from a transfer from earned surplus to capital account and thus belongs to income.
Settle order accordingly.