Burke, J.
This proceeding was instituted under article 79 of the Civil Practice Act for a construction of a deed of trust dated May 4, 1918. By that deed, which designated the petitioner City Bank Farmers Trust Company trustee, one Fosdick created two trusts for the lives, respectively, of two nieces. A grandniece was named as a secondary life beneficiary under each trust. The principals of the funds were originally made up of 300 shares of General Electric Company stock. As to each trust it was provided that on the death of the survivor of the income beneficiaries the principal was to be distributed to the settlor or his residuary estate. Fosdick reserved the right at any time during his life to revoke the instrument and repossess, free of all trusts, funds in the hands of the trustee. The trustee was given authority to retain, sell, invest or reinvest the principal securities or proceeds thereof, provided, if the settlor were still alive, that his written consent first be obtained. A special provision for the treatment of stock dividends, the subject of this proceeding, was inserted in the deed. It states: “ Anything hereinabove contained to the contrary notwithstanding, said Trustee shall transfer to said Honor, or if he is dead, to his executor * * * free of all trusts hereby created, <my u%d all stock dividend's which it may from time to time receive on any stocks held by it hereunder.” (Emphasis supplied.)
Fosdick died on April 6, 1926 without revoking or amending the trust. His will named the American Museum of Natural History sole residuary legatee. As such it would be entitled to any distributions of stock in the nature of stock dividends declared after the settlor's death.
The construction was sought with reference to certain stock distributions in 1954 from companies, shares in which then constituted the trust corpora. Special Term decided that both distributions, one by General Electric and the other by Standard Oil of Indiana, were in part stock dividends within the meaning of the trust deed. Appellants in this court have confined their argument to the former.
The stock distribution in question was made in the following manner. By April of 1954 the trustee held 1,200 shares of General Electric no par value common stock in each trust. The increase had resulted from stock splits in 1926 and 1929, both *651 of which split the stock 4 for 1 and both of which were unaccompanied by any transfer of accumulated earnings to capital. The remaining shares received in the split but not part of the trust in 1954 had been reinvested. On April 20th of that year the General Electric stockholders adopted the- following resolution at their- annual' meeting:
££ Resolved
(a) that the 35,000,000 shares of Common Stock without par value which the Company is presently authorized to issue be changed into 105,000,000 shares of Common Stock with a par value of $5 each on the basis that each such previously authorized share of Common Stock without par value, whether issued or unissued* shall be changed and converted into three shares of Common Stock having a par value of $5 each.”
The petition described the proceedings taken by the corporation in conjunction with the resolution as follows:
‘1 Prior to the change in the capitalization of said General Electric Company as aforesaid, it had issued 28,845,927.36 shares of its common stock without par value, These shares had a stated value for capital purposes of $6.25 each, resulting in a total capital of $180,287,046. Under the change in the company’s capitalization as approved by the stockholders, the company will have issued 86,537,782.08 shares of stock having a par value of $5 each. As set forth above, the Board of Directors took the necessary action to provide that upon the adoption of the said resolutions by the stockholders the capital of the company be increased from $180,287,046 to $432,688,910.40 by the transfer of $252,401,864.40 from the company’s reinvested earnings (earned surplus). Of the thus augmented capital of the corporation, 5/12ths is therefore attributed to its former capital and 7/12ths to the transfer to capital from reinvested earnings.”
The effect of these proceedings was tersely summarized by the lower court. As pointed out in the opinion: (1) all the old stock was cancelled; (2) 36,057,409.2 shares of $5 par value stock (aggregate par $180,287,046) were issued for the old *652 capital of $180,287,046; (3) 50,480,372.88 shares of $5 par value stock were issued and were backed by a capitalization of earned surplus in the amount of $252,401,864.40 which amount was equivalent to the aggregate par value of the said shares. Mathematically, 7/12ths of the new shares represented new capital, transferred, as pointed out, from earned surplus.
A proxy statement and notice of election sent before the adoption of the resolution suggested that the new stock distribution would serve a two-fold purpose, viz.: it would most likely reduce the market value of the individual shares thus rendering them more saleable and it would, by means of the low par value, result in a savings on the Federal transfer tax.
The lower court held that 7/12ths of the new stock which was attributed to the transfer from reinvested earnings to capital account constituted a stock dividend within the meaning of the trust deed and was distributable, therefore, to the residuary legatee as required by the instrument. He reached this conclusion by application of the definition of the term “ stock dividends ” as it appears in our decisional law. The Appellate Division unanimously affirmed his determination.
Appellants beneficiaries assert that the substance and intent of the distribution was not to distribute earnings, but rather was merely to split up the shares and apportion the additional capital and that, therefore, it did not constitute a stock dividend. They point out that distributions of stock, like the one under discussion, which substantially increase the number of shares outstanding, ordinarily reduce both the market value of and income upon the original shares so that in a case like the present one if the additional shares are permitted to leave the trust principals it will bring about a considerable reduction in the amount of annual income distributable to the beneficiaries. This result, it is concluded, could not have been intended by the settlor. Appellants also contend that even if the courts below were correct in finding that the distribution by General Electric was partially a dividend the number of shares allocable to the legatee under the trust deed should be no more than the number of shares equal in market value to the amount of surplus capitalized at the time of the change. The determination below held that that proportion of stock which represented new *653 capital, without reference to market value, constituted the dividend. Concededly, that proportion was 7/12tlis or 7,200 shares.
In our view the courts below were correct. The term “ stock dividends ” has been frequently the subject of litigation and has acquired a fixed judicial meaning which clearly includes the corporate action in question. Since before the execution of the subject deed in 1918 it has been held and understood that a stock dividend consists of a distribution of stock by a corporation to its shareholders evidencing and accompanied by the transfer of accumulated surplus to the corporation’s capital account (see Equitable Trust Co. v. Prentice, 250 N. Y. 1, 12; Williams v. Western Union Tel. Co., 93 N. Y. 162; 4 White on New York Corporations [12th ed.], pp. 34-35). The term “ dividend ” signifies a distribution of profits or earnings to the shareholders. In its most obvious form it consists of a distribution of cash. It may also be in shares of the corporation. When in this form it is accomplished by segregating that part of the earnings it represents. The segregation is accomplished by capitalization. Therein lies the distinction, as found in the cases, between a mere stock split and a stock dividend. The stock dividend evidences that “ the company’s accumulated profits have been capitalized, instead of distributed to the stockholders or retained as surplus available for distribution in money or kind should opportunity offer ” (Eisner v. Macomber, 252 U. S. 189, 211). A stock split, on the other hand, results from the simple increase in the number of shares without altering surplus or segregating earnings. The distinction has been clearly put in a number of cases and requires no further elaboration here (see Matter of Davis, 11 Misc 2d 372; Matter of Horrmann, 3 A D 2d 5, 7; Matter of Sanford, 4 Misc 2d 487, 495).
It is the almost exceptionless holding of the later cases on this subject that the distribution of additional stock to shareholders in conjunction with the capitalization of earned surplus constitutes a stock dividend. It is established with equal clarity that in apportioning the. amount of newly issued shares attributable to the new capital no reference is had to market value — that proportion of the shares whose par or stated value is represented by the new capital constitutes the stock dividend (see e.g., Matter of Horrmamn, supra; Matter of Sanford, supra; *654 Matter of Berger [Bankers Trust Co.], 6 Misc 2d 468; Matter of Thoms, 3 Misc 2d 784; Matter of Norton, 129 Misc. 875; Matter of Strong, 198 Misc. 7, affd. 277 App. Div. 1157).
Respondent correctly points out that the only inconsistencies in these recent decisions pertain to questions not here involved. Thus it has been held by some courts that unless earnings be capitalized simultaneously with the issue of the new stock there is no stock dividend (Matter of Strong, supra; Matter of Lindsay, 11 Misc 2d 374; cf. Matter of Berger [Bankers Trust Co.], supra) and some have distinguished situations where the dividend is partially from capital surplus instead of wholly out of earnings (see Matter of Payne, 11 Misc 2d 367, mod. 4 A D 2d 937). Here, however, the transfer of capital supporting the issuance was made entirely from earnings and simultaneously with the new issue.
As has been said by another court in relation to the very distribution by General Electric now before us: “ From the foregoing and the wealth of authoritative decisions cited it is readily seen that it (has) been uniformly held that a declaration of dividend such as was made by the General Electric [Company] can only be construed and determined to be a stock dividend.” (Matter of Sanford, 4 Misc 2d 487, 496, supra.)
The cases cited by appellants which deal with the Osborne rule (Matter of Osborne, 209 N. Y. 450) and what preceded and followed it, are not persuasive of any other conclusion and for that reason are not relied upon or treated in any of the cases above cited. Nothing in appellants’ cases differs with the traditional definition of “ stock dividend ” and in fact some of them serve as further evidence that the definition as applied below was also the judicial sense of that term at the time of the deed’s execution. Thus, for example, the Osborne case itself dealt with a 2 for 1 distribution of stock accompanied by a transfer of surplus. This distribution was treated and described throughout that opinion as a stock dividend. Indeed, the rule there propounded assumed the existence of a stock dividend and held merely that, unless the trustor otherwise provided, that part of a stock dividend which represented earnings accumulated before the creation of the trust should be retained as part of principal and that part representing earnings after the creation of the trust be awarded to income beneficiaries. That *655 rule was subsequently modified by section 17-a of the Personal Property Law which provides for the treatment of stock dividends where no express provision is made by the trustor. In the present case express provision has been made rendering this section inapposite. The problem here presented requires only a definition of the term stock dividends as used in the deed. That definition, we have seen, appears with unmistakable clarity in the decisions.
Having ascertained the meaning of “ stock dividends ” as existent at the time of its selection by the settlor we are obliged to apply it here. What appellants argue, in effect, is that we should now alter the traditional meaning of the term to comport with the definitions used today by the New. York Stock Exchange and some accountants. These definitions would limit the term i£ stock dividend ” to include only those shares distributed as dividends and simultaneously capitalized by the corporation at or about its fair market value. In this way, it is hoped, situations like the present one where the corpus of the trust is substantially decreased by distribution of the stock dividend to other than the principal may be avoided. But this approach, it appears to us, overlooks the basic principle ruling our inquiry and that is that the settlor’s intent as manifested in his language be effectuated. What appellants suggest actually presumes — without warrant — an intention on the part of the settlor and then seeks to effect it by applying to the language he used a new definition. Thus it is presumed that the settlor would not have desired the impairment of the trust corpora in favor of the residuary legatee. But no such intent appears from the creative instrument. All we have is the language he employed. Examining that language and the sense in which it was used when the deed was executed we are bound to conclude that all stock dividends, as then and now understood, were to be distributed to the legatee. The consequences of that policy are deemed to have been considered and intended by the settlor.
Perhaps the definitions suggested by appellants and the amici curia more nearly comport with the meaning of stock dividends and stock splits as understood in the modern communities of economies and finance and should be altered. However, that function is properly .for the Legislature alone. A judicial change in these definitions now, chancing the frustration of the *656 intent of many settlors and testators who have no doubt relied upon what has heretofore been held to be their meaning, seems to us unwarranted.
The order of the Appellate Division should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the trusts.