In the Matter of the Accounting of MILDRED B. DONNELLY et al., as Executors of FRANK E. DONNELLY, Deceased Executor of MARJORIE K. CARLSON, Deceased.

Fourth Department, February 22, 1962.

*Easton & Wagner* (*William E. Easton* of counsel), for C. Carl Carlson, appellant.

*Remington, Gifford, Willey & Williams* (*Thomas H. Remington* of counsel), for Judith P. Velz, respondent.

*Richard H. Connors,* as special guardian for Suzanne Velz and others, infants, respondent.

*Edward P. Loeser* for Lincoln Rochester Trust Company.

HALPERN, J. The question in this case is whether a stock distribution made by the Eastman Kodak Company in 1959, in the ratio of one share for each share of common stock then outstanding, should be allocated to the income of trusts created by the decedent's will, rather than to the principal of the trusts.

The decedent's will created various trusts and provided, with respect to them, that " [a]ll stock dividends received shall be considered income and distributed as such ". The testatrix died on August 6, 1956, and her will was probated shortly thereafter.

It appears that, from 1948 to 1956, seven stock dividends, at the rate of 5% in some years and 10% in others, had been declared by the Eastman Kodak Company. To support each of the stock dividends, an amount equal to the par value of the stock at $10 per share was transferred from earned surplus to the common stock capital account. There was also concurrently transferred, upon each occasion, from earned surplus to capital surplus varying amounts per share ($30 per share on five occasions, $45 per share and $76 per share respectively on the other two), representing the excess of the fair market value of the stock over the par value. The total charged to earned surplus in connection with the seven stock dividends was $325,109,823. This was transferred to the capital accounts of the company as follows:

(1) Transferred to the common stock capital account at $10 per share for each share issued .................................. $67,522,470
(2) Transferred to the capital surplus account.. 257,587,353

Total ........................... $325,109,823

On April 13, 1959, the Eastman Kodak Company decided to double its outstanding common stock by distributing one new share of common stock for each share then outstanding. In accordance with this resolution, 19,191,123 shares of common stock were issued and distributed. To cover these shares at $10 par value each, the sum of $191,911,230 was transferred from the company's capital surplus account to its common stock capital account. The capital surplus account from which the transfer was made consisted chiefly (in fact, all but two million of it) of the transfers theretofore made during the preceding 11 years from earned surplus, in connection with the stock dividends discussed above.

Twenty-five hundred additional shares were received by the trustees of the trusts created under the decedent's will, as a result of the share-for-share stock distribution.

The question presented is whether the stock distribution is a stock dividend within the meaning of the quoted provision of the will directing that all stock dividends be allocated to income.

The Surrogate answered the question in the negative, stating:

'' This Court believes that in such situations earnings capitalized to support prior stock dividends lose their identity as such and consequently any stock distribution based on a capitalization of such capital surplus belongs to trust principal ''.

We agree with the Surrogate's conclusion that the stock distribution was not a stock dividend within the meaning of the direction contained in the decedent's will. A stock dividend is a stock distribution which is supported by a transfer from current earnings or earned surplus to the capital of the company. " The term ' dividend ' signifies a distribution of profits or earnings to the stockholders   *   *   *   The stock dividend evidences that ' the company's accumulated profits have been capitalized, instead of distributed, to the stockholders   *   *   * in money or kind ' ' ". (*Matter of Fosdick*, 4 N Y 2d 646, 653.) It must be assumed that it is this type of stock distribution to which the testatrix referred in directing that " stock dividends *   *   *   shall be considered income ". (Cf. *Matter of Muller*, 14 A D 2d 439.)

When the one-for-one stock distribution took place in 1959, there was no transfer of any earnings. There was only a transfer from one capital account to another (from the capital surplus account to the common stock capital account) to cover the par value of $10 per share of the new stock. No part of the earned surplus of the company was involved in the transaction. The distribution was therefore not a stock dividend within the meaning of the direction in the decedent's will.

It is true that the capital surplus account, from which the $10 per share transfer was made in 1959, had originated in earnings but, as the Surrogate correctly stated, those earnings had lost their identity or character as such when they were transferred to capital surplus to support the prior stock dividends.

The appellant argues that we should go back of these transactions and treat the funds transferred to capital surplus as still retaining their character as earnings because, in his opinion, the transfer was unnecessary. The appellant maintains that all that it was necessary to do was to transfer to capital an amount equal to the par value of the stock issued as a stock dividend, and that there was no need to transfer an additional amount to capital surplus to cover the excess of the market value of the stock over its par value. It may well be that the transfer to capital surplus was not required by the corporation statutes, but it was required by the principles of sound accounting. (American Institute of Accountants, Accounting Research Bull. No. 43, Ch. 7[B]; Capriles and McAniff, The Financial Provisions of the New [1961] New York Business Corporations Law, 36 N. Y. U. L. Rev., 1239, 1259, 1267.) In any event, the appellant's argument is wholly inapplicable to a publicly held company like the Eastman Kodak Company which is subject

to the Rules of the New York Stock Exchange, and to regulation by the Securities and Exchange Commission. " A rule of the New York Stock Exchange, required and enforced by the Securities and Exchange Commission, demands that, when a stock dividend is declared, the earned surplus account of the corporation must be charged with the market value of the stock to be distributed, not merely its par or stated value. (See N. Y. Stock Exchange — Company Manual, § A-13; Rappaport, SEC Accounting Practice and Procedure [1956], p. 312." (*Matter of Payne* [*Bingham*], 7 N Y 2d 1, 11.)

The directors of the Eastman Kodak Company were therefore required to transfer the full market value of the shares issued as a stock dividend from earned surplus to capital accounts, not only in order to comply with sound accounting principles, but also in order to comply with the regulatory rules which were binding upon them. Furthermore, even if the directors were not bound to take this course, the fact remains that it was a proper and permissible course for them to follow and the directors decided, in good faith and in the exercise of their best judgment, to follow it, and their decision is binding in determining the nature of the capital surplus account of the company. (*Matter of Strong*, 198 Misc. 7, affd. 277 App. Div. 1157; *Matter of Clark*, 25 Misc 2d 506.)

It therefore follows that when a transfer was made from the capital surplus account in 1959 to cover the par value of the new stock issued at that time, this did not constitute a transfer of earnings. " If capital surplus thus derived is subsequently transferred to the capital stock account to support a further issuance of stock ", this " does not constitute a capitalization or distribution of earnings ". (*Matter of Payne* [*Bingham*], *supra*, p. 11.) The stock distribution therefore did not constitute a stock dividend, under the generally accepted " transfer of earnings " test.

As a matter of fact, as Judge FULD points out in his opinion in the *Payne* (*Bingham*) case, if such a stock distribution were treated as a stock dividend and were allocated to income, this " would actually represent a double distribution to the income beneficiary of the identical earnings! " (*Matter of Payne* [*Bingham*], p. 11.)

The stock distribution in this case was in the nature of a stock split, rather than a stock dividend. If the number of shares had been doubled without any transfer from any of the company's accounts to support the new shares (the par value per share having been correspondingly reduced), the distribution would clearly have been a " pure " stock split. " A stock

split * * * results from the simple increase in the number of shares without altering surplus or segregating earnings." (*Matter of Fosdick,* 4 N Y 2d 646, 653.) The only deviation from a " pure " stock split in this case was that there was a transfer from capital surplus to capital to cover the $10 par value of the new stock. It was necessary to make this transfer because the par value of the stock was not concurrently reduced when the number of outstanding common stock shares was doubled. In this respect, the distribution may not have been a " pure " split, but it was still in the nature of a split. The incidental transfer from capital surplus to capital did not change the nature of the transaction. There was no segregation of earnings; there was no transfer from current earnings or earned surplus to any capital account. The transfer was wholly within the capital accounts — from one capital account to another. The total amount of the capital accounts, constituting the permanent capitalization of the company, remained unchanged. An incidental transfer from capital surplus to capital to cover the par value of a stock distribution does not prevent the stock distribution from being treated as a stock split. (*Matter of Payne* [*Bingham*], *supra*; *Matter of Lissberger,* 189 Misc. 277, affd. 273 App. Div. 881, motion for leave to appeal denied 298 N. Y. 934.) As the court said in the *Lissberger* case (p. 278): " The feature that distinguishes a stock dividend from a split-up ' * * * is the * * * formal transfer of *earned* surplus, legally available for dividends to capital account ' [emphasis added] (Paton, Accountant's Handbook [3d ed.], p. 1016)."

The *Lissberger* case is directly in point. In that case, there was a transfer from capital surplus to capital stock in the amount necessary to cover the par value of the new stock; yet the court held that the stock distribution was a stock split and not a stock dividend and that therefore the income beneficiary was not entitled to any part of the distribution under a direction in a will similar to that in the will in our case.

It is the settled law that a stock distribution which may properly be characterized as a stock split is not a stock dividend within the meaning of a direction in a will that all stock dividends shall be considered income. (*Matter of Fosdick,* 4 N Y 2d 646, *supra*; *Matter of Lissberger, supra*; *Matter of Horrmann,* 3 A D 2d 5; *Matter of Berger,* 6 Misc 2d 468.) See, generally, Dean Niles' article on " Fosdick, Cunningham and Chaos " (vol. 98 Trusts and Estates, p. 924).

Unfortunately, the first paragraph of the letter which the Eastman Kodak Company sent out under date of April 13, 1959, with respect to the stock distribution, was not worded accurately.

The letter stated that "The purpose of this stock distribution is to place in the hands of each shareholder tangible evidence of his share in the portion of the earnings of the company which have been retained for use in the business and which are being capitalized by the stock distribution." This sentence had apparently been copied from a prior letter sent out in connection with the stock dividend of 5%, declared in 1956 and distributed in 1957, the only change being the substitution of the word "distribution" for the word "dividend". The letter of April 13, 1959, was obviously in error. It should have said that the earnings had previously been capitalized in connection with prior stock dividends and had been transferred to capital surplus and were now being retransferred from capital surplus to capital. As a matter of fact, in subsequent paragraphs of the letter, it was stated that the transfer to the capital stock account to cover the par value of the new stock distribution would be made from the capital surplus account and the composition of the capital surplus account was given in detail, showing that it had been created by transfers from the earned surplus account upon the occasion of the declaration of the stock dividends in the years 1948 to 1956. It need hardly be added that the erroneous wording of the first paragraph of the letter cannot alter the indisputable facts, or affect the legal rights of the parties growing out of them.

The appellant correctly asserts that the rule of *Matter of Osborne* (209 N. Y. 450) is inapplicable to this case. The *Osborne* rule provided that stock dividends should be apportioned between income and principal on the basis of the time when the earnings which were the source of the stock dividends were accumulated. The *Osborne* rule applies only to trusts created before May 17, 1926 the date on which section 17-a of the Personal Property Law was amended by chapter 843 of the Laws of 1926. The trusts in this case were created upon the death of the testatrix on August 6, 1956. In the absence of an express direction to the contrary in the will, the trusts would have been governed by section 17-a, which provides that all stock dividends shall be treated as principal. The effect of the direction in the will in this case was to render section 17-a inapplicable and to require that all stock dividends be treated as income. Both section 17-a and the *Osborne* rule being thus inapplicable, the income beneficiaries would be entitled to all stock dividends, whether they were supported by a transfer of earnings accumulated prior to the creation of the trusts or by a transfer of earnings accumulated thereafter.

But the fact remains that the stock distribution in this case was not supported by a transfer of any earnings and was not a stock dividend at all. As has been demonstrated above, the distribution was in the nature of a stock split. Therefore, the inapplicability of the *Osborne* rule is of no aid to the appellant.

Furthermore, it does not follow from the fact that the *Osborne* rule is inapplicable, that, as the appellant argues, the cases decided under that rule are of no relevance in the determination of the problem presented in this case. On the contrary, the distinction between stock dividends and stock splits drawn in the *Payne (Bingham)* case and in the other cases dealing with problems arising under the *Osborne* rule, is not only relevant but controlling here. The result in this case necessarily follows from the reasoning of the *Payne (Bingham)* case. (Cf. Note, 60 Col. L. Rev. 557, 561.) The Court of Appeals held in the *Payne (Bingham)* case, with respect to a trust created before 1926, that a stock distribution supported by a transfer from capital surplus, which had in turn been created by a capitalization of earnings to support prior stock dividends, is not a stock dividend calling "the Osborne rule into play" (*Matter of Payne [Bingham]*, *supra*, p. 11.) Neither is it a stock dividend calling into play the direction in a will made after 1926 that stock dividends should be treated as income.

The decree appealed from should therefore be affirmed.

Bastow, J. P., Goldman, McClusky and Henry, JJ., concur.

Decree insofar as appealed from unanimously affirmed, with costs to each party filing a separate brief payable out of the corpus of the trust.