# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 28
The People &c.,
          Appellant,
     v.
Patrick Labate,
          Respondent.

Amanda R. Iannuzzi, for appellant.
Brian Perbix, for respondent.

WILSON, Chief Judge:

After filing an off-calendar statement of readiness in December 2017, the People were not ready on the first scheduled trial date of September 5, 2018. The People requested a 12-day adjournment without explanation, and the trial court adjourned the trial to October

- 1 -

18, 2018. On the next two dates set for trial, October 18th and November 28th, the People again announced they were not ready, each time providing no explanation. Mr. Labate, who was charged with a class A misdemeanor, was statutorily entitled to be tried within 90 days of his indictment. Four hundred and twenty days after his indictment, he had still not been tried. Indisputably, most of that time is not chargeable to the People. The sole question in this case is what part of the 43-day period between September 5, 2018, and October 18, 2018, should be charged to the People. On this record, the full 43-day adjournment is chargeable to the People, and the indictment was properly dismissed.

I.

On December 10, 2017, Patrick Labate was arrested and charged with reckless driving (Vehicle and Traffic Law § 1212) and related offenses. In short, he crashed his car into a parked police vehicle that had its overhead lights activated, instead of taking one of the two roads at either side of the police car.[1] At arraignment the following day, the People were not ready on two counts, including the reckless driving count, because they lacked a

---

[1] Following the arrest, Mr. Labate was charged with Criminal Mischief in the Fourth Degree (Penal Law § 145.00 [3]); Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs (VTL § 1192 [2]); Aggravated Driving While Intoxicated (VTL § 1192 [2] [a]); Operating a Motor Vehicle While Under the Influence of Alcohol (VTL § 1192 [3]); and Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs (VTL § 1192 [1]). Prior to trial, the People dismissed the counts of Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs and Aggravated Driving While Intoxicated. The Court granted Mr. Labate's trial order of dismissal for the count of Criminal Mischief in the Fourth Degree. Mr. Labate was acquitted of the remaining counts of Operating a Motor Vehicle While Under the Influence of Alcohol and Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs.

necessary supporting deposition. On December 28, 2017, the People filed an off-calendar supporting deposition and a certificate of readiness declaring ready for trial on all counts. It is undisputed that between the day Mr. Labate was arraigned on December 11, 2017, and the off-calendar statement of readiness on December 28, 2017, seventeen days were chargeable to the People.

After a series of hearing dates where the People reaffirmed their readiness, Criminal Court set a first trial date for September 5, 2018. On that day, the People appeared and stated that they were not ready for trial. They requested a 12-day adjournment to September 17, 2018. The court inquired, "[w]hy aren't the People ready? Do you have an indication?" to which the assistant district attorney—who was filling in for the assigned trial assistant—replied, "I do not at this time, your Honor." The court then noted, "[t]his case is from 2017. We need to prioritize it. Can we put this on for October 18th?" All the parties agreed. On its Court Action Sheet, the court wrote the People's reason for unreadiness as "no reason" and the case was adjourned to October 18, 2018.

On October 18th, the People again stated that they were not ready. A different assistant district attorney—also not the assigned trial assistant—requested an adjournment to October 29, 2018. The court asked if the assistant district attorney who had handled the pretrial motions was still assigned to the case, to which the appearing assistant district attorney replied, "he was promoted within the office. I don't believe he's handling the case any longer." She named the new trial assistant assigned to the case, who was not present

in court that day. The court pointed out that this case was last on September 5th,[2] which was prior to the promotion of the previously assigned trial assistant, and asked, "why aren't the People ready today?" The People responded, "I'm not sure, Your Honor." The court then required the People to file a new certificate of readiness: "because there's no reason [given] today[,] I'm going to request the People – require the People to file a certificate of readiness . . . and we'll adjourn this matter once again for trial." The court reemphasized that "[t]his case is almost a year old." Although the People had requested an adjournment to October 29th, the court offered a November date.[3] All parties agreed to a November 28th, 9:30 a.m. adjournment for trial. The court again wrote "no reason" for the People's unreadiness on its Court Action Sheet.

On the November 28th trial date, the People were once again not ready. The court asked the People if there was any reason they would like to place on the record and the People responded, "[n]o, your Honor." The People did not request an adjournment to a specific date. The court reminded the People that the order to file a certificate of readiness was a "continuing standing order." The court then suggested a January trial date and the People offered that "the first week of February is okay." The court clarified that the People understood they were being charged with the time until they filed the new certificate of readiness, and the People responded: "Yes, your Honor. We'll file but – when we are

---

[2] The court transcript in the record has this date as "December 5th," but given the fact that the prior court date was September 5th, it seems this was a stenographic error.

[3] The trial court originally offered November 9th, but defense counsel had hearings and trials for the entire month of November and only had November 28th available.

ready[ ] . . . ." All parties agreed to a February 4, 2019 date for a jury trial. The court stated on the record that the People were charged with the entire period and once again put on its Court Action Sheet "no reason" as to the People's unreadiness.

Off-calendar, on December 3, 2018, the People filed a new certificate of readiness. On February 4th, even though neither the assistant district attorney of record nor the defense counsel of record were present, the People (on the second call) indicated they were ready. At that point, Mr. Labate's case was "420 days old." Defense counsel filed a motion to dismiss pursuant to CPL 30.30, asserting that the People were not ready for trial within the statutorily required 90-day period from the commencement of the action.[4]

II.

In his CPL 30.30 motion, Mr. Labate argued that the People's failure to be ready on successive trial dates and requests for specific adjournments without offering any explanations rendered the earlier statement of readiness illusory. The People's opposition to the motion offered no explanation for why the People were not ready, or any general response to Mr. Labate's accusation that the original off-calendar statement of readiness or the subsequent on-record indications of future readiness on September 17th were illusory.

---

[4] The motion to dismiss argued that Count 1 (VTL § 145.00[1]), Count 5 (VTL § 1212), Count 2 (VTL § 1192 [2]), Count 3 (VTL § 1192 [2-A]), Count 4 (VTL 1192 [3]), and Count 5 (VTL § 1192 [1]) should be dismissed, but the Appellate Term ruled only on the count in the accusatory instrument charging Mr. Labate with reckless driving—Count 5, VTL § 1212—and passed on "no other issue." Accordingly, only the validity as to that one claim is in front of us.

Criminal Court denied Mr. Labate's motion to dismiss. The court found the People were chargeable with 75 days and rejected Mr. Labate's claim that the People should be charged with the entire 43-day adjournment from September to October. The court reasoned that September 5th was the People's first postreadiness declaration of unreadiness and as "the case was not adjourned to the People's requested date, there is no basis to believe that the People would not actually be ready on the requested date." Mr. Labate's case proceeded to trial where a jury convicted him of reckless driving and acquitted him of all the remaining charges.

Mr. Labate appealed, and the Appellate Term unanimously reversed (74 Misc 3d 138[A], 2022 NY Slip Op 50309[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022]). The court reasoned that, because the People did not "provide any explanation, reasonable or otherwise, for their failure to be ready on September 5, 2018, October 18, 2018 or November 28, 2018[,]" Mr. Labate "met his burden of demonstrating that the People's statement that they would be ready for trial on September 17th, which is 'presumed truth and accurate,' was illusory" (*id.* at *2, quoting *People v Brown*, 28 NY3d 392, 405 [2016]). Thus, the court held that the People's failure to provide any explanation for their unreadiness on the first three trial dates or any basis for their 12-day adjournment request required them to be charged with the entire 43-day adjournment period from September 5th to October 18th. As a result, the court reversed the judgment, granted the branch of Mr. Labate's motion as to the reckless driving count, and dismissed that count.

A Judge of this Court granted the People leave to appeal. We now affirm the Appellate Term's order, but on different reasoning.

III.

The dispute about how to charge time in this case exists purely in a postreadiness context—meaning, the time after which the People have already declared ready for trial. In a postreadiness context, the People are generally charged with any delay resulting from their own inaction (*see Brown*, 28 NY3d at 404), but not delay attributable to the court (*see People v Goss*, 87 NY2d 792, 797 [1996]). Thus, when the People request an adjournment to a specific date, the requested time is ordinarily charged to the People, and time beyond that is presumptively not charged to the People, because it is assumed to result from court congestion or some other factor beyond the People's control. The question here is whether that presumption can be maintained on this record. Our decisional law requires that the disputed time be charged to the People.

Section 30.30 of the Criminal Procedure Law was enacted in 1972 to address prosecutorial delays that "deprived defendants of their right to a prompt trial, hindered the People's ability to try cases effectively, and undermined public confidence in the criminal justice system" (*People v Anderson*, 66 NY2d 529, 535 n 1 [1985]; *see also People v Sinistaj*, 67 NY2d 236, 239 [1986]; *People v Price*, 14 NY3d 61, 64 [2010]; *Brown*, 28 NY3d at 403). The statute places a specific time limit on the People to be ready for trial and otherwise requires dismissal.

Because the most serious offense with which Mr. Labate was charged was a class A misdemeanor, the People were required to be ready for trial within 90 days (*see* CPL

30.30 [1] [b]).  Once a defendant "sufficiently alleges that the People were not ready within the statutory period, 'the People [have] the burden of showing their entitlement to a statutory exclusion' " (*Brown*, 28 NY3d at 403, citing *People v Luperon*, 85 NY2d 71, 81 [1995]).  Mr. Labate sufficiently alleged that the People were not ready within 90 days as 420 days had elapsed between his indictment and the date of his CPL 30.30 motion.

Section 30.30 also, however, specifically contemplates circumstances and periods that must be excluded when computing the People's time (*see* CPL 30.30 [4]).  The People may toll the "speedy trial clock" by declaring ready for trial (*Brown*, 28 NY3d at 404). Being "ready for trial" requires the People to make a statement of readiness, either on the record in open court or as a written off-calendar notice (*People v Chavis*, 91 NY2d 500, 505 [1998]; *see also People v Kendzia*, 64 NY2d 331, 337 [1985]).  Because a statement of readiness serves to "toll the 'speedy trial clock' from running" either completely or "for the remainder of that adjournment period" (*People v Stirrup*, 91 NY2d 434, 440 [1998]), a declaration of readiness must be more than "merely mouthing those words" (*People v England*, 84 NY2d 1, 5 [1994]).  Announcing trial readiness cannot simply be an "empty declaration that the People are prepared to present their case" but instead must affirm that "the People have done all that is required of them to bring the case to a point where it may be tried" (*id.* at 4).

Once the People have declared ready, a postreadiness delay may still be "charged to the People when the delay is attributable to their inaction and directly implicates their ability to proceed to trial" (*Brown*, 28 NY3d at 404, quoting *People v Carter*, 91 NY2d 795, 799 [1998]; *see also Anderson*, 66 NY2d at 535).  That proposition is longstanding.

In *People v McKenna*, we dismissed an indictment under CPL 30.30 because of an "unexcused, postreadiness delay by the prosecution" (76 NY2d 59, 63-64 [1990]). Likewise, in *People v Jones*, 66 NY2d 539, 539-540 (1985), we held that the People's postreadiness "unexcused failure" to produce a defendant in their custody for trial warranted the People being charged the delay (*McKenna*, 76 NY2d at 64-65).

Of course, there are plenty of perfectly good reasons why—some of which the statute specifically contemplates—the People may declare trial readiness and subsequently become unready on a scheduled trial date, causing a postreadiness delay that should not count against them (*see* CPL 30.30 [3] [b], [4]; *see also People v Dean*, 4 NY2d 651, 656-657 [1978] ["Subdivision 4 recognizes that certain delays are inherent in any criminal justice system and must be tolerated, and that other delays are caused by the defendant and should not prejudice the People's right to bring him to trial"]). One such reason is court congestion.

Our decisional law draws a line between postreadiness and prereadiness delay as it relates to court congestion. Although the courts may be congested before the People are ready to try a case, that time is charged to the People because such delays "do not excuse the People from timely declaring their readiness for trial" (*People v Smith*, 82 NY2d 676, 678 [1993]; *People v Brothers*, 50 NY2d 413, 417 [1980] ["court congestion before the District Attorney is ready for trial . . . is irrelevant and thus cannot excuse the District Attorney's failure to be ready. While court congestion may prevent a trial, in no sense does it operate to prevent the District Attorney from being ready"]; *see also People v Collins*, 82 NY2d 177, 181 [1993]; *People v Correa*, 77 NY2d 930, 931 [1991]). Correspondingly,

once the People announce they are ready for trial, a postreadiness delay due to court congestion is *not* chargeable to the People when they were ready to try the case but the court (or defendant) was not (*see People ex rel. Franklin v Warden, Brooklyn House of Detention for Men*, 31 NY2d 498, 500 [1973]; *People v Giordano*, 56 NY2d 524, 525 [1982]; *Anderson*, 66 NY2d at 534, 535; *People v Cortes*, 80 NY2d 201, 209-210 [1992]; *Goss*, 87 NY2d at 798; *Brown*, 28 NY3d at 408). That distinction is important here.

Charging courts with postreadiness delays means the People are in fact "ready for trial" and the court's congestion (or the defendant's unreadiness, or other factors affecting court availability) is the only reason preventing the case from advancing to trial. Our decisional law supports that distinction (*see Franklin*, 31 NY2d at 500-502 [where none of the delays were attributed to the failure of the prosecutor to be ready for trial given they maintained readiness and offered proof that the cause was "calendar congestion and lack of court facilities"]; *Giordano*, 56 NY2d at 525 [affirming the order of the Appellate Division where the "People established their continued readiness for trial" during a period where the defendant "was out of the court's jurisdiction" and continued to do so until defendant was brought to trial and the People "further established that the delay was due to court congestion"]; *Anderson*, 66 NY2d at 535 [the People established on the record their continued readiness for trial during the period "after readiness was announced" and "further established that the delay was attributable to court congestion"]; *Cortes*, 80 NY2d at 210 ["once the People announce their readiness on the record" subsequent delays resulting from court congestion provide no basis for CPL 30.30 as that delay does not

"directly implicate( ) the People's ability to proceed with trial"]).[5] Put simply, where the "impediment that caused the delay during the disputed periods" does not "affect the People's ability to present their own case" and consequently does "not affect their 'readiness[,]' " those periods of postreadiness delay are "simply not cognizable under CPL 30.30" (*Cortes*, 80 NY2d at 210). Indeed, it would make no sense to charge the People with delay when they are ready to go forward with trial and factors unrelated to their readiness prevent one from occurring.

IV.

It follows then that our precedents consistently explain that if the People are not ready for trial after they have declared readiness and seek an adjournment, the People must provide an explanation for their post-readiness requests for adjournments either some time before or in response to a defendant's CPL 30.30 motion. That explanation—whether given in advance of the scheduled trial date, contemporaneously with it, or thereafter—is presumed valid, and the People will not be charged with the time beyond that which they requested in determining whether their 30.30 time has expired. The burden then shifts to the defendant to overcome that presumption (*see Brown*, 28 NY3d at 406).

Our most recent explanation of that test is set forth in *People v Brown*, which we decided with two companion cases—*People v Young* and *People v Canady*. In Section II

_____

[5] Notably, in all these cases, the court highlighted not only that the People maintained their readiness throughout but also that the People established the delay was attributable to court congestion.

of that opinion—which contains our statement of law that controlled all three cases—we stated, "[i]n the postreadiness context, the People bear the burden of ensuring that the record explains the cause of adjournments sufficiently for the court to determine which party should properly be charged with any delay" (*id.* at 404 [internal quotations and citations omitted]). In that same section, we repeated that "the People retain the obligation in the postreadiness context to ensure 'that the record explains the cause of adjournments sufficiently for the court to determine which party should properly be charged with any delay' " (*id.* at 406, citing *Stirrup*, 91 NY2d at 440). We reiterated that point a third time, stating, "if the People announce that they are not ready after they have filed an off-calendar statement of readiness, the People ultimately must explain the reason for their change in readiness status" (*id.*). We expressly stated, and now reaffirm, that "[t]he People could, but need not, state the reasons on the record at the calendar call. In all events, however, the People must establish a valid reason for their unreadiness in response to a defendant's CPL 30.30 motion" (*id.*).[6]

---

[6] It is not clear what point the dissent seeks to make by claiming that we fail to "recognize that a record can explain who caused a delay without elaborating on the specific reason for that delay" (dissenting op at 9; *see also id.* at 11, 14). "Who" asked for a delay is obvious from the record, but as to time beyond that requested, the "why" becomes important to know how to charge the time. The conclusion the dissent reaches in that paragraph is one with which we fully agree: "we know that the period of adjournment requested by the People will be charged to the People regardless of the reason for the request" (*id.* at 9). Yet we do so bearing in mind that *Brown* repeatedly emphasizes that in a postreadiness context, where the People are not ready on a scheduled trial date, they "bear the burden of ensuring that the record explains the *cause* of adjournments sufficiently for the court to determine which party should properly be charged with any delay"—that is, the why" for any time beyond the time requested by the People (28 NY3d at 404 [emphasis added]; *see also id.* at 400, 406).

In sum, *Brown* requires the People to ensure that the record explains the cause of adjournments (*see id.*).  The People's explanation may be provided contemporaneously in open court (which may be the simplest) or later, even as late as in response to a defendant's motion under CPL 30.30, because a determination as to whether an adjournment will be charged or excluded is ordinarily "made when the defendant moves to dismiss . . . , and not at the time the adjournment is granted" (*People v Berkowitz*, 50 NY2d 333, 349 [1980]).  However, when the People have failed to offer a reason for a postreadiness adjournment request causing delay of a previously scheduled trial date, they are charged with the entire delay, not merely the length of the adjournment they requested.

*Brown* is not novel in that regard; it merely reminded that the People's explanation need not be made contemporaneously in open court.  Nearly a quarter century earlier, in *People v Liotta*, we held that,

> "where, as here, the court grants adjournments after the People have announced the indictment ready for trial, the burden rests on the People to clarify, on the record, the basis for the adjournment so that on a subsequent CPL 30.30 motion the court can determine to whom the adjournment should be charged.  Inasmuch as the People failed to do so in this case, the adjournment must be charged to them" (79 NY2d 841, 843 [1992]).

Likewise, in *People v Jamison*, we found a 49-day postreadiness adjournment was chargeable to the People because on the calendar call the "prosecutor did not assert the People's readiness for trial or ask the court for an explanation for the lengthy adjournment.  Because the People failed to clarify, on the record, the basis for this adjournment, the period was properly charged to them" (87 NY2d 1048, 1049 [1996]; *see also Collins*, 82 NY3d at 182 [where the People failed to prove their postreadiness request for a continuance was

only for a five-day adjournment, "the People clearly failed to meet their burden of making

a record to reflect the true basis for this two-week adjournment" thus the "entire delay"

was charged to them]).  Despite the dissent's recharacterization of our precedent (*see*

dissenting op at 9-11), there is simply no escaping the very first paragraph of *Brown*, which

states its holding, in relevant part:

> "If the People announce that they are not ready after having filed an off-calendar statement of readiness, and the defendant challenges such statement—at a calendar call, in a CPL 30.30 motion, or both—the People *must* establish a valid reason for their change in readiness status to ensure that a sufficient record is made for the court to determine whether the delay is excludable" (28 NY3d at 400 [emphasis added]).

Contrary to the dissent's contention, *People v Canady* does not suggest otherwise

(*see* dissenting op at 11-13).  Instead, the contrast between *Brown* and *Canady* provides a

good illustration of our longstanding rule.  In *Canady*, after filing an off-calendar statement

of readiness, the People subsequently showed up to court two separate times, announced

they were no longer ready, and requested specific and shorter adjournment dates than the

court ultimately gave them (*Brown*, 28 NY3d at 401).  The first time, the People were not

ready "because the assigned prosecutor was engaged in a trial" (*id.*).  The second time, the

People were not ready because "the People did not have their file" (*id.*).  Both times,

however, the People gave reasons for their postreadiness adjournment requests.

Accordingly, this Court concluded that they should have been charged only with the time

they had requested (*id.* at 407-408).  Indeed, the paragraph stating the result in *Canady*—

"[t]he postreadiness delay attributable to the court is not charged to the People"—begins

by stating that the People were not ready because the prosecutor was on trial in another

case (*id.* at 407). Thus, the People's provision of a reason was central to our holding in *Canady*, as the balance of the opinion expresses clearly and repeatedly.[7]

Mr. Labate's case is not like *Canady*; it is instead like *Brown*. In *Brown*, after filing an off-calendar statement of readiness, the People appeared at the subsequent calendar call and announced they were not ready and, as here, "failed to provide an explanation as to why they were not ready" (*id.* at 402). What is clear from the difference between *Brown* and *Canady*, and from our consistent precedents from *Liotta* onward, is that, once a defendant raises a CPL 30.30 challenge, the People must, at some point, provide an explanation for their postreadiness adjournments and delay so that the Court can determine what portion of the delay is properly attributable to them.

The crucial error in our dissenting colleagues' misimpression that we are "overturn[ing] decades of precedent" (dissenting op at 1) is most clearly found in their contention that "the additional 31 days were undisputedly caused by court congestion" (*id.* at 2).[8] The People have a duty to maintain readiness (*see Kendzia*, 64 NY2d at 337-338).

---

[7] The dissent does not contend that *Canady* is not distinguishable on its facts, inasmuch as the People provided reasons there and none here. Instead, the dissent contends that our decision in *Canady* did not rely on that difference (*see* dissenting op at 12-13). That, of course, renders vacuous the dissent's claim about any *stare decisis* effect of *Canady* (*see id.* at 13-14): *"stare decisis . . .* will not be extended to cases fairly and reasonably distinguishable" (*Vilas v Plattsburgh & M. R. Co.*, 123 NY 440, 441 [1890]).

[8] It is also difficult to believe that we have "overturned decades of precedent" (dissenting op at 1) when commentators and the Appellate Division alike have understood *Brown* as we do (*see, e.g.,* CPL § 30.30 [Consol., Lexis Advance through 2024 released Chapters 1-49, 61-105] ["(u)nder (*Brown*), statements of readiness are generally presumed valid, but that presumption could be rebutted. Where, for example, the prosecution subsequently answered that it was not ready for trial, the burden would shift to the prosecution to explain how it could legitimately have been ready previously and later became unready"]; William

Here, after declaring readiness, the People were not ready on September 5th, nor again on the next scheduled trial date of October 18th, nor on the next scheduled trial date of November 28th, and asserted readiness (though the trial assistant was not present) on the date that Mr. Labate moved to dismiss on CPL 30.30 grounds—420 days after the accusatory instrument was filed. As in *Liotta*, "the burden rests on the People to clarify . . . the basis for the adjournment so that . . . the court can determine to whom the adjournment should be charged" (79 NY2d at 843) and *Brown*, "the People must establish a valid reason for their change in readiness status . . . for the court to determine whether the delay is excludable" (28 NY3d at 400), the People's repeated unexplained unreadiness

---

C. Donnino, CPL 30.30 Practice Commentaries ["once the defendant (shows that the CPL 30.30 time limit has been exceeded), the burden shifts to the prosecution to show that the People were ready and remained ready during the requisite period . . . . If the defense fulfilled its initial burden and the prosecution failed to answer or to sufficiently controvert the defense allegations, the motion must be granted"]; *1 NY CLS Desk Ed. Gilbert's Criminal Practice Annual § 30.30* [pursuant to *Brown*, if after declaring readiness "the prosecution subsequently answered that it was not ready for trial, the burden would shift to the prosecution to explain how it could legitimately have been ready previously and later became unready"]; *People v Owens*, 209 AD2d 549 [2d Dept 1994]; *People v Fields*, 214 AD2d 332, 333-334 [1st Dept 1995] [where the People requested a specific adjournment and the court granted a further one at defense counsel's specific request, the People were "properly charged only with the . . . postreadiness adjournment requested" however, where the People "failed to satisfy their burden of providing a clear record" of "the basis for (their) postreadiness adjournment" they "must assume responsibility for the entire postreadiness delay"]; *People v Betancourt*, 217 AD2d 462, 464 [1st Dept 1995] ["While the People cannot be charged with any time added to the requested adjournment because of court congestion or inconvenience when, in a post-readiness period, they request an adjournment for a specific number of days to a date certain, and *explain why* such a limited adjournment is necessary . . . . when the record reveals no such request . . . . " and the People never "explain(ed) why an adjournment was being requested or how they might be ready again on two days notice(,)" they "may not avail themselves of that rule"] [emphasis added]).

on repeated trial dates to which they had assented, casts grave doubt on any claim that the delay "undisputedly" was due to court congestion.

Our dissenting colleagues caution our holding today is insensitive to faultless prosecutors (*see* dissenting op at 1) and will lead to "people who perpetrate crimes escaping accountability due to mere scheduling errors" (*id.* at 19).  At bottom, however, our dissenting colleagues take umbrage with the CPL 30.30 statute as a whole, rather than with our holding.  What they characterize as an "unnecessary technicality" (*id.*) that will "undoubtedly result in the unnecessary dismissal of viable prosecutions with no basis for such dismissal found in CPL 30.30" (*id.*), is in fact, not a "new rule" (*see id.* at 1, 2, 16, 17) but has been in place for half a century, equally contemplated by both the legislature and our precedent.

Imposing strict time limitations on the prosecution with the threat of dismissal is consequential.  No doubt the legislature was aware of the potential impact speedy trial limits would have on the State and enacted CPL 30.30 nonetheless.  Undeniably, the legislature still concluded that "defendants, victims, and society are best served by a criminal justice system that expedites prosecutions and manages delays accordingly" (*Brown*, 28 NY3d at 413 [Rivera, J., concurring], citing Governor's Program Bill Mem, Bill Jacket, L 1972, ch 184 at 5, 1972 Legis Ann at 6).

It is also unclear why our dissenting colleagues believe that our decision will cause people who commit "heinous crimes" to walk free (dissenting op at 19).  The duty of the People to explain the reason for their unreadiness is slight and need not be stated contemporaneously.

Moreover, although Mr. Labate's conviction occurred immediately before April 2019, when the legislature amended CPL 30.30 as part of "a suite of criminal justice reforms" (*People v Galindo*, 38 NY3d 199, 203 [2022]), those amendments, restate in part, the same rule from *Brown* that we reaffirm today. As relevant here, the legislature amended portions of subdivision (4), which governs the periods of time to be excluded when calculating chargeable time to the People (*see* L 2019, ch 59, part KKK, § 4). Section 30.30 now provides that "[a]ny such exclusion when a statement of unreadiness has followed a statement of readiness made by the [P]eople must be evaluated by the court after inquiry on the record as to the reasons for the [P]eople's unreadiness and shall only be approved upon a showing of sufficient supporting facts" (CPL 30.30 [4] [g]). Thus, the dissent's concerns will materialize—or not—without regard to our decision.

## V.

Here, as described above, the People filed an off-calendar statement of readiness, were not ready on three successive trial dates, and failed to provide any explanation despite the court's invitation to do so, and despite the opportunity to provide an explanation in their opposition to Mr. Labate's 30.30 motion. Indeed, even in their papers to this Court, the People offered no explanation for any of the times they were not ready on a previously scheduled trial date to which they had assented. Surely that conduct does not serve the legislature's intended purpose of "discourag[ing] prosecutorial inaction" (*Price*, 14 NY3d at 64). Instead, the People's conduct fits squarely within our dissenting colleagues understanding of postreadiness delays—they are "charged to the People only when the

delay is attributable to their inaction and directly implicates their ability to proceed to trial"

(dissenting op at 7 [internal citations omitted]).

Accordingly, applying the rule of *Liotta* and *Brown*, the order of the Appellate Term

should be affirmed.

TROUTMAN, J. (dissenting):

Today the majority overturns decades of precedent by creating an ill-advised new rule that will force courts to dismiss cases on speedy trial grounds through no fault of the prosecutor.

Our State's speedy trial statute requires the People to be ready for trial within a time frame based on the highest charge in the accusatory instrument (*see* CPL 30.30 [1]). If the People are not ready for trial within that time frame, or cause postreadiness delay that pushes the trial outside of that time frame, then defendants can move to dismiss the charges against them (*see id*.). Until today, after declaring ready for trial, the People were required to ensure only that, going forward, the record reflected who caused any postreadiness delay. By ensuring that the People make a record, a court reviewing the record can determine, for example, whether any postreadiness delay was caused by the People or by the court. This is important because we have held on numerous occasions that postreadiness delay attributable to the court is not attributable to the People (*see e.g. People v Canady*, 28 NY3d 392, 403, 407 [2016]; *People v Goss*, 87 NY2d 792, 797 [1996]).

The majority's opinion upends this common-sense understanding that courts and parties have relied on for decades by attributing the court's postreadiness delay to the People. Applied here, this new rule means the People are held responsible for 43 days of postreadiness delay when they requested only a 12-day adjournment and the additional 31 days were undisputedly caused by court—all because the prosecutor appearing did not know the underlying reason for the People's 12-day adjournment request.

The majority provides no rationale for imposing this new requirement on the People. Nor does it provide any clarity as to what types of "valid" explanations by a prosecutor will suffice in this postreadiness context. Is an undisclosed ailment sufficient? Staffing issues? On this the majority is silent. Courts and prosecutors are left without guidance to navigate the perils created by this new rule—a rule unmoored from CPL 30.30 and this

Court's speedy trial jurisprudence. While the majority leaves much unexplained, the deleterious effect on the administration of justice is certain. I dissent.

I.

In the early morning hours of December 10, 2017, defendant while operating a motor vehicle recklessly crashed into a parked police car, thereby endangering the life of the officer inside who was pried out of the wreck. The police arrested defendant and charged him with multiple misdemeanor offenses, including reckless driving (Vehicle and Traffic Law § 1212). Based on the charges, the People were required to be ready for trial within 90 days (*see* CPL 30.30 [1] [b]).

On December 28, 2017, the People filed an off-calendar statement of readiness regarding the reckless driving charge. It is uncontested that the People were chargeable with 17 days of delay up to that date. The People declared their maintained readiness at several subsequent appearances, and there were various adjournments for discovery and motion practice. On the first scheduled trial date of September 5, 2018—more than eight months after the People's initial declaration of readiness—a different prosecutor appeared for the People and requested an adjournment to September 17. In response to the court's questioning, the prosecutor answered that he had no "indication" at that time why the adjournment was necessary. The court then proposed adjourning the matter until October 18—the 43-day period at issue on this appeal—and both defendant and the People agreed.

On October 18, 2018, a different prosecutor appeared and indicated that the People could not proceed that day, requesting an adjournment to October 29, 2018. The People explained that the previous prosecutor had been promoted and was no longer handling the

case.  When asked why the People could not proceed that day, the current prosecutor responded that she was "not sure."  In response to defense counsel's request, the court ordered the People to file another certificate of readiness, which they ultimately did.

After some additional appearances and adjournments, the parties appeared before the court on February 4, 2019.  The People were ready for trial, but defendant moved to dismiss the reckless driving charge on speedy trial grounds, contending that the prosecution's delays exceeded the 90-day limit of CPL 30.30.  Defendant argued that, in view of the People's subsequent unexplained unreadiness, their statement on September 5 that they would be ready for trial on September 17 was illusory and, therefore, the People should be charged with all 43 days of the earlier adjournment from September 5 to October 18, not just the 12 days they had requested.

Criminal Court denied the speedy trial motion, charging the People with only the 12-day adjournment they requested on September 5, reasoning that "[t]he established rule is that 'postreadiness delay attributable to the court is not chargeable to the People,' thus, the period of the adjournment in excess of that actually requested by the People is excluded."  The court also held that defendant failed to show either that the People's initial statement of readiness was illusory or that the People were not, in fact, ready on the date they requested.  Following a jury trial, defendant was convicted of reckless driving and sentenced to a conditional discharge.

The Appellate Term reversed, granted defendant's CPL 30.30 motion, and dismissed the reckless driving charge, reasoning that defendant had demonstrated that the People's statement they would be ready for trial on September 17 was "illusory" (74 Misc

3d 138[A], 2022 NY Slip Op 50309[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022]). The majority now holds that the entire 43-day adjournment period was chargeable to the People, asserting that the "presumption" that postreadiness court delay is not chargeable to the People cannot be maintained because the People failed to provide a reason for their September 5 adjournment request. Inasmuch as the majority's analysis finds no support in either our precedent or CPL 30.30, I cannot agree.

II.

"CPL 30.30 was enacted to serve the narrow purpose of insuring prompt prosecutorial readiness for trial, and its provisions must be interpreted accordingly" (*People v Brown*, 28 NY3d 392, 403 [2016] [internal quotation marks omitted]; *see People v Price*, 14 NY3d 61, 64 [2010]). Notably, CPL 30.30 "addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense" (*People v Anderson*, 66 NY2d 529, 535 [1985]).

In misdemeanor cases such as this one, CPL 30.30 requires the People to be ready for trial within 90 days (*see* CPL 30.30 [1] [b]). Whether the People have timely satisfied this obligation is generally determined by computing the time elapsed between commencement of the criminal action and the People's statement of readiness, adding periods of postreadiness delay attributable to the People, and subtracting periods excludable under the statute (*see People v Cortes*, 80 NY2d 201, 208 [1992]). Thus, evaluating a CPL 30.30 motion for dismissal requires a court to determine when the People filed their first valid statement of readiness, what periods of delay are attributable to the People, and what periods of delay may be excluded.

There are two elements to a valid statement of readiness (*see Brown*, 28 NY3d at 403). First, the statement of readiness must be made either on the record in open court or by a written notice of readiness sent by the prosecutor to both defense counsel and the appropriate court clerk (*see id.*; *People v Kendzia*, 64 NY2d 331, 337 [1985]). Second, the People must actually be ready to proceed at the time they declare readiness (*see Brown*, 28 NY3d at 403-404; *Kendzia*, 64 NY2d at 337). "Readiness is not defined simply by an empty declaration that the People are prepared to present their direct case" (*Brown,* 28 NY3d at 404 [internal quotation marks omitted], quoting *People v England*, 84 NY2d 1, 4 [1994]). "The inquiry is whether the People have done all that is required of them to bring the case to a point where it may be tried" (*id.* [internal quotation marks omitted]).

While a failure to declare readiness within the statutory limits results in dismissal of the prosecution unless the People can demonstrate that sufficient time periods should be excluded, a statement of readiness satisfies the People's duty to be ready for trial and serves to toll the "speedy trial clock" from running for the remainder of the adjournment period (*Brown*, 28 NY3d at 404; *see People v Stirrup*, 91 NY2d 434, 440 [1998]). Significantly, a statement of readiness made by the People is illusory and "insufficient to stop the running of the speedy trial clock," if the People are not actually ready at the time it is made, such as when the statement merely indicates the People's expectation of future readiness (*Brown*, 28 NY3d at 404 [internal quotation marks omitted]; *see Kendzia*, 64 NY2d at 337). However, a statement of readiness is "presumed truthful and accurate" (*Brown*, 28 NY3d at 405). Thus, "a defendant who challenges such a statement must demonstrate that it is illusory" and, "in the absence of proof that a readiness statement did not accurately reflect

the People's position . . . , the People [have] discharged their duty under CPL 30.30" (*id.* at 404-405 [internal quotation marks omitted]; *see People v Carter*, 91 NY2d 795, 799 [1998]).

Interpreting CPL 30.30 in light of its legislative purpose, we have drawn a distinction between delays occurring in a prereadiness context and those that occur postreadiness (*see Brown*, 28 NY3d at 403-406). While the People are chargeable with all prereadiness delay not excludable under the statute (*see Cortes*, 80 NY2d at 213), postreadiness delays are charged to the People only "when the delay is attributable to their inaction and directly implicates their ability to proceed to trial" (*Carter*, 91 NY2d at 799; *see Anderson*, 66 NY2d at 534). And, after the People make a valid statement of readiness, their adjournment requests are treated as postreadiness delay unless the defendant can show that the adjournment resulted from the People's failure to maintain continued readiness for trial (*see generally Anderson*, 66 NY2d 529).

Adjournment requests and other postreadiness delays—e.g., the People not being ready to proceed on a particular day—do not necessarily indicate that the People have failed to maintain continued trial readiness (*see id.* at 539, 543). As we stated, CPL 30.30 "was intended to limit the People's time for preparation to the period specified, but they are entitled to the full period allowed, either before or after answering ready" (*id.* at 537). When, for example, the People have completed the necessary preparations for trial, but request an adjournment for a scheduling conflict, the People's readiness is not vitiated or called into question; they are simply exercising their prerogative to use any remaining statutory speedy trial time. Nor is such an adjournment fairly characterized as a prediction

of future readiness; the People have already done all that is required to proceed to trial and simply will not proceed on that particular day.

Critically, "the defendant ordinarily has the burden of showing that any postreadiness adjournments occurred under circumstances that should be charged to the People" (*Brown*, 28 NY3d at 404 [internal quotation marks omitted]). Postreadiness delays attributable to causes other than the People's inaction—e.g., a court's calendar backlog— are not charged to the People (*see id*.; *see People v Goss*, 87 NY2d 792, 797 [1996] ["postreadiness delay attributable to the court is not charged to the People"]). "Thus, as to periods of delay that occur following the People's statement of readiness, any period of an adjournment in excess of that actually requested by the People is excluded" (*Brown*, 28 NY3d at 404 [internal quotation marks omitted], quoting *People v Boumoussa*, 104 AD3d 863, 863 [2d Dept 2013]).

### III.

Because the majority concedes that "[t]he dispute about how to charge time in this case exists purely in a postreadiness context—meaning, the time after which the People have already declared ready for trial" (majority op at 7)—they err in affirming the Appellate Term's dismissal of this criminal proceeding. In so doing, the majority incorrectly treats the well-established rule that postreadiness delay attributable to the court is not charged to the People as a mere "presumption" that a defendant can rebut without proving that the People's statement of readiness was illusory (*id.*). This is error. As we reiterated in *Brown*, "[i]n the absence of proof that [a] readiness statement did not accurately reflect the People's position . . . , the People [have] discharged their duty under

CPL 30.30" (28 NY3d at 404 [internal quotation marks omitted]).  In other words, the only way to overcome the rule that "postreadiness delay attributable to the court is not charged to the People" is by proving that the People's readiness statement was illusory (*id*. [internal quotation marks omitted]).  It is not by pointing out that the People failed to give a reason for requesting a postreadiness adjournment.

There is no dispute that, "[i]n the postreadiness context, the People bear the burden of ensuring that the record explains the cause of adjournments sufficiently for the court to determine which party should properly be charged with any delay" (*id*. [internal quotation marks omitted]).  The problem is that the majority fails to recognize that a record can explain who caused a delay without elaborating on the specific reason for that delay.  In other words, we know that the period of adjournment requested by the People will be charged to the People regardless of the reason for the request.

None of the cases cited by the majority support charging the People with postreadiness delay attributable to the court simply because that delay followed an adjournment admittedly chargeable to the People where the reason for the adjournment is unclear.  Rather, those cases stand for completely different propositions.

In *People v Stirrup* (91 NY2d 434, 440 [1998]), the People requested a postreadiness adjournment on January 14, 1994, but did not specify the length of the adjournment.  We determined that the clock ran until the People filed an off-calendar statement of readiness 10 days later, on January 24.  Our opinion did not discuss any reason for the adjournment beyond the People's requesting it.  Yet the People were not charged with the remainder of the adjournment from January 24 to March 3 because they were not the cause of that delay.

None of the cases cited in *Stirrup* contain any discussion indicating that the reasons for a requested adjournment are relevant. Instead, they are concerned with the People making sure the record indicates (1) who was asking for an adjournment and (2) how long they were asking for. If those things are not clear from the record, the People will be charged the time, as shown by the following cases.

*People v Liotta*—which the majority would have us believe compels its holding— involved an unexplained 28-day adjournment granted after an off-the-record bench conference (*see* 79 NY2d 841, 843 [1992]). The record, however, did not indicate who requested the adjournment. We concluded that the People were chargeable with the adjournment because the People had not met their burden "to clarify, on the record, the basis for the adjournment so that on a subsequent CPL 30.30 motion the court can determine to whom the adjournment should be charged" (*id.*).

None of *Liotta*'s progeny cited by the majority hold otherwise (*see* majority op at 15-16 n 8). In all those cases, the Appellate Division charged time to the People when they failed to make a record of who requested an adjournment, the length of the adjournment requested by the People, or who was responsible for the delay (*see People v Fields*, 214 AD2d 332, 333 [1st Dept 1995]; *People v Betancourt*, 217 AD2d 462, 464 [1st Dept 1995]; *People v Owens*, 209 AD2d 549, 550 [2d Dept 1994]), none of which is the case here.

Additionally, in our decision in *People v Collins*, although the People argued that they had requested an adjournment of only five days, the record only reflected a request for an *indefinite* adjournment, with no objection when the court adjourned the case for 14 days (*see* 82 NY2d 177, 181 [1993]). Because the People failed to ensure the record

reflected that they were requesting only five days and that the remainder of the time was due to some other "basis," the People were chargeable with the entire period (*id*. at 182).

In *People v Cortes*, the People argued that a 44-day delay was occasioned by defense counsel's expressed intention to make a CPL 30.30 motion (*see* 80 NY2d 201 [1992]). "However, no contemporaneous record was made of the reason for the . . . adjournment and, consequently, the trial court could not determine on the subsequent CPL 30.30 motion to whom the adjournment should be charged" (*id*. at 215). We recognized that, "[a]lthough the defendant ordinarily has the burden of showing that any postreadiness adjournments occurred under circumstances that should be charged to the People[,] . . . it is the People's burden to ensure, in the first instance, that the record of the proceedings at which the adjournment was actually granted is sufficiently clear to enable the court considering the subsequent CPL 30.30 motion to make an informed decision as to whether the People should be charged" (*id*. at 215-216). Because the People failed to satisfy their obligation, we held that they must assume responsibility for the delay.

Despite what the majority contends, none of these cases supports the proposition that the record needs to reflect the reason why the People sought a postreadiness adjournment, so long as the extent of their requested adjournment is clear. Moreover, none of these cases stand for the proposition that the People can be charged with postreadiness delay caused by the court.

In fact, we have held just the opposite. In *Canady*, a companion case to *Brown*, we stated in no uncertain terms—as we have on prior occasions—that "postreadiness delay

attributable to the court is not charged to the People" (28 NY3d at 407; *see Goss*, 87 NY2d at 797).

The majority unconvincingly attempts to distinguish *Canady* by pointing out that the People stated that they could not proceed "because the assigned prosecutor was engaged in a trial" and because "the People did not have their file" (majority op at 14, quoting *Canady*, 28 NY3d at 401). As a result, the majority claims that *Canady* does not apply to this case because "here[] the People 'failed to provide an explanation as to why they were not ready' " (majority op at 15 [quoting our decision in *Brown*, not *Canady*]).

But nothing in our decision in *Canady* tied our application of the rule that the People are not chargeable with the court's delay to either the fact of, or the basis for, the People's explanation for their delay. Instead, we stated the postreadiness adjournment rule without qualification: "[A]s to periods of delay that occur following the People's statement of readiness, any period of an adjournment in excess of that actually requested by the People is excluded" (*Canady*, 28 NY3d at 404; *see People v Goss*, 87 NY2d 792, 797 [1996]; *People v Boumoussa*, 104 AD3d 863, 863 [2d Dept 2013]). We did not qualify our holding other than to say that the record needed show to whom the court should charge various periods of time. We did not require any further explanation and neither did the courts in any of the cases that we cited for this proposition (*see id.*, citing *Goss*, 87 NY2d at 797 ["[P]ostreadiness delay attributable to the court is not charged to the People"]; *Boumoussa*, 104 AD3d at 863 ["As to periods of delay that occur following the People's statement of readiness, any period of an adjournment in excess of that actually requested by the People is excluded"]). Indeed, the dissent in *Canady* specifically took issue with the majority's

refusal to attach significance to the People's failure to explain their need for an adjournment, and the dissent would have affirmed "because the People failed to provide any reason for their statement of unreadiness and thus the court did not err in charging them with 41 days" (*Canady*, 28 NY3d at 415 [2016] [Rivera, J., dissenting]).  Consequently, the majority's attempt to distinguish *Canady* so contorts the meaning of *Canady* that it no longer resembles what was written in that decision.  If the majority is going to overturn our precedent, it would be preferable that they acknowledge what they are doing rather than doing it sub silentio.

In charting a different course, the majority disregards the doctrine of stare decisis, "which holds that common-law decisions should stand as precedents for guidance in cases arising in the future and that a rule of law once decided by a court, will generally be followed in subsequent cases presenting the same legal problem" (*People v Peque*, 22 NY3d 168, 194 [2013] [internal quotation marks omitted]).  The benefits of this doctrine are that it "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process" (*People v Taylor*, 9 NY3d 129, 148 [2007] [internal quotation marks omitted]), by assuring the public "that a court is an institution, not merely a collection of individuals, and that governing rules of law do not change merely because the personnel of the court changes" (*People v Bing*, 76 NY2d 331, 338 [1990]).  The public is deprived of those benefits today.

Undoubtedly, "*stare decisis* . . . will not be extended to cases fairly and reasonably distinguishable" (*Vilas v Plattsburgh & M. R. Co.*, 123 NY 440, 441 [1890]).  But as shown

above, the facts of this case are neither "fairly nor reasonably distinguishable" from *Canady* and our precedent relied upon therein (*id*.; *see supra* at 11-12). Given the basis of our decision in *Canady*, the majority can hardly claim that this case does not present the same legal problem addressed in that case. Consequently, applying the doctrine of stare decisis, this Court should reach the same conclusion here that it did in *Canady* and hold that dismissal of this criminal proceeding is not warranted under CPL 30.30.

To be sure, we have repeatedly acknowledged that "[i]n the post readiness context, the People bear the burden of ensuring that the record explains the cause of adjournments sufficiently for the court to determine which party should properly be charged with any delay" (*Brown,* 28 NY3d at 404 [internal quotations marks omitted], quoting *Stirrup*, 91 NY2d at 440). Yet, the majority's reliance on this line of precedent is misplaced. A record can explain who caused a delay without elaborating on the specific reason for that delay. Here, we know that the People will be charged with 12 days based on their request for an adjournment regardless of the reason for the request, and the People have never claimed otherwise. Absent any demonstration by defendant that the People were not ready for trial when they issued their statement of readiness, we have never held that the People are chargeable with delay attributable to the court simply because the delay followed an adjournment chargeable to the People and counsel was unable to articulate the reason it was necessary.

Moreover, we have never required the People to make a record of the specific reason for the court's postreadiness delay, which would be absurd. As the majority acknowledges, delay attributable to the court "is assumed to result from court congestion or some other

factor beyond the People's control" (majority op at 7). Given the majority's acknowledgement that court congestion is just "[o]ne such reason" for court delay (majority op at 9), it is puzzling why they spend so much time discussing it (*see id*. at 9-11). Contrary to what the majority asserts (*see id*.), the reason for the court's delay does not matter. And it seems unwise to task the People with meddling in the court's affairs to determine the reason for court delay, given that "[o]bviously the court must set its own calendar" (*Goss*, 87 NY2d at 797). In the end, the reason for a court's postreadiness delay is utterly irrelevant to our analysis (*see People v Giordano*, 56 NY2d 524, 525 [1982] ["[w]hatever may in fact have been the reason why the case was not reached for trial [after the People announced their readiness], there is no basis for dismissal pursuant to that statute"]).[1]

The majority relies on *Brown* for the proposition that delay attributable to the court must be charged to the People if they do not "provide an explanation" or "valid reason" why they needed an adjournment (majority op at 12, 14-16, quoting *Brown*, 28 NY3d at 400, 402, 406). *Brown* supports no such proposition inasmuch as, there, the *Brown* Court needed to know the reason for the delay in order to determine if the People's off calendar statement of readiness was illusory (*see Brown*, 28 NY3d at 408-409). Here, where the majority concedes that we are operating in a postreadiness context (majority op at 7), the

---

[1] This quotation from *Giordano* undermines the majority's reliance on that case as being one concerned with the issue of court congestion. It was the Appellate Division that based its determination on the People's establishing "that the delay was attributable to court congestion" (*Giordano*, 81 AD2d 1003, 1003 [4th Dept 1981]), we did not. We were, instead, expressly indifferent about the "reason" for the court's delay and never mentioned court congestion (*see Giordano*, 56 NY2d at 525).

explanation for the delay is irrelevant because the record clearly indicates who caused each period of delay.

The majority's new rule amounts to a conflation of the facts and holdings in *Brown*, which dealt with illusory statements of readiness, and *Canady*, which dealt with postreadiness adjournments.[2]  Stated differently, this new rule is an amalgamation of two disparate concepts soldered together to create a new rule that would substantially nullify this Court's holding in *Canady* by combining *Brown's* concern with illusory statements of readiness with *Canady's* application of the longstanding rule that, postreadiness, time attributable to the court is not attributable to the People.  Either we are in a postreadiness context, as the majority admits, or the People's statement of readiness was illusory, which the majority does not argue.

The majority's attempt to use *Brown* in this way is unsupported by our precedents. For example, despite the majority's assertion to the contrary, we did not dismiss in *People v McKenna* because the People failed to proffer an excuse for postreadiness delay (76 NY2d 59 [1990]).  Rather, we dismissed because the record established the People's "concededly negligent failure to provide the Grand Jury minutes for five months after their statement of readiness was made," which "was a direct, and virtually insurmountable, impediment to the trial's very commencement" (76 NY2d at 64).  Similarly, the basis for the delay was not unexplained in *People v Jones*; the delay chargeable to the People was

---

[2] The commentaries to which the majority cites support no such conflation of our separate holdings in *Brown* and *Canady* (*see* majority op at 15-16 n 8).

caused by the People's unexcused failure to use due diligence to produce the defendant in court (*see* 66 NY2d at 539-540).  In each of these cases—unlike here—the reason for the delay called into question the People's overall readiness for trial and the presumption of truthfulness and accuracy as to the People's prior statement of readiness was rebutted by defendant's demonstration that the People were not, in fact, ready for trial at the time the statement was filed.

By contrast, here, defendant has made no showing that either the People's statement of readiness was illusory or that the People would not be ready on the date to which they sought an adjournment, and the majority does not conclude otherwise.  The majority's suspicion that the People's adjournment request "casts grave doubt" on the truthfulness and accuracy of their earlier statements of readiness is baseless (majority op at 17).  The People's adjournment request here—made more than eight months after the People's initial declaration of readiness and with several intervening ready appearances—is a far cry from those cases in which the People declared readiness off calendar only to be unready days later at the very next court appearance (*see Brown*, 28 NY3d at 399; *People v Sibblies*, 22 NY3d 1174, 1175 [2014]).

The implications of the majority's holding are potentially momentous given that the majority does not believe they have created a *new* rule.  They view their decision as merely clarifying the application of a "longstanding rule" (majority op at 14).  But if that is true, the majority's holding will apply to criminal judgments currently deemed final and potentially expose them to collateral attack in any case where the People failed to give a reason for their postreadiness adjournment request (*see generally People v Favor*, 82 NY2d

254, 263 [1992] ["[R]etroactivity should not be in question when a court's ruling merely applies previously established principles in a new factual setting or settles a question in a manner that was clearly foreshadowed" (internal quotation marks omitted)]). Unfortunately, the majority overlooks this serious concern.

IV.

The majority's holding today does not serve the interests of justice. And although the majority makes the baseless allegation that the dissent "take[s] umbrage with the CPL 30.30 statute as a whole" (majority op at 17), they are wrong. As recently as December we unanimously held that, if the People fail to establish that they "exercise[d] due diligence and made reasonable inquiries prior to filing the initial COC [certificate of compliance] despite a belated or missing disclosure," their "COC should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed" (*People v Bay*, —NY3d—, 2023 NY Slip Op 06407, *2 [2023]; *see also People v Bay*, 39 NY3d 1077 [2023] [Troutman, J.] [granting leave to appeal to this Court]).[3] No, what I take umbrage with is

---

[3] *Bay* involved the amended version of CPL 30.30, which "governs the periods of time to be excluded when calculating chargeable time to the People" (majority op at 18, citing L 2019, ch 59, part KKK, § 4), and "now provides that '[a]ny such exclusion when a statement of unreadiness has followed a statement of readiness made by the [P]eople must be evaluated by the court after inquiry on the record as to the reasons for the [P]eople's unreadiness and shall only be approved upon a showing of sufficient supporting facts' " (*id.*, quoting CPL 30.30 [4] [g]). The parties agree that the amendments do not apply here, and we have no occasion to interpret their application to these facts. The majority's advisory opinion that the amendments effectively dictate the same outcome should therefore be regarded as dicta.

the majority's treatment of this Court's precedent, not the statute that was the focus of our precedent.

Today's holding makes way for people accused of heinous crimes to avoid trial due to what is the epitome of a technicality. Although some outside the legal profession on occasion scoff at the vindication of a criminal defendant's constitutional or statutory rights—because they wrongly view the defendant as being "let off on a technicality"—this is not that. The majority's decision today creates an unnecessary technicality that has no basis in the constitution, CPL 30.30, or our precedents, and it will result in people who perpetrate crimes escaping accountability due to mere scheduling errors.

To the extent the majority is concerned that the People may seek adjournments for discrete periods of time in the hopes that additional time will be granted due to court delay, trial courts maintain discretion to deny adjournment requests where gamesmanship is suspected. Today's decision ignores a court's responsibility for the delays that it creates or the adjournments that it tolerates.

While the reason for a postreadiness adjournment request may be relevant to the trial judge's exercise of discretion, absent any showing sufficient to rebut the presumption that the People's prior statement of readiness was truthful and accurate, the reason the People seek to use the additional time remaining on the speedy trial clock is irrelevant so long as the record is clear as to whom the delay is attributable and as to the length of the requested adjournment. The majority's contrary conclusion will undoubtedly result in the unnecessary dismissal of viable prosecutions with no basis for such dismissal found in CPL

30.30 or, until today, our jurisprudence interpreting the speedy trial statute.  I therefore dissent.


Order affirmed. Opinion by Chief Judge Wilson. Judges Rivera, Cannataro and Halligan concur. Judge Troutman dissents in an opinion, in which Judges Garcia and Singas concur.

Decided March 21, 2024